## G. W. NEWCOME v. D. W. LIGHT.

(Case No. 1335.)

1. DISQUALIFICATION OF JUDGE.— A wife sued her husband for divorce, alleging cruel treatment, etc., which suit was dismissed. Afterwards the husband sued for divorce on the ground of abandonment, and obtained a decree of divorce. The judge who presided on the trial of the second suit was the attorney of the husband in the first suit. The husband defended in the first suit on the ground that he was not guilty of cruel treatment, and that hence her abandonment was not justified. Afterwards the wife sued in this case for a partition of the community property, which was also sought in the first suit, though not in the second, which resulted in a divorce. *Held,*

    (1) The judge was disqualified to render judgment in the second suit, and the decree therein rendered was not conclusive between the parties.

    (2) A charge recognizing the validity of the decree as establishing the abandonment by the wife of her husband without cause, was error.

APPEAL from Grayson. Tried below before R. De Armand, Esq., special judge.

Nancy J. Light and the appellee, D. W. Light, intermarried in Grayson county, Texas, about August 24, 1854. They had five children, one of whom died in infancy, and the other four were still living. About January 12, 1867, the wife left the husband, and at the same time filed a suit against him in the Grayson district court for divorce, on the ground of cruel treatment, and for a division of the community property. Pending the suit alimony was allowed the wife. About August 4, 1869, the suit was dismissed by the wife. About August 22, 1878, the husband filed a suit against the wife in the Grayson district court for divorce, on the ground of abandonment without cause, the wife having remained away after she separated from him, January 12, 1867, and on September 19, 1878, the wife having interposed no defense, the husband obtained a decree of divorce. February 15, 1879, the wife filed this suit for the recovery and division of the community property of herself and husband; in December, 1879, the wife died, and the suit was revived in the name of the appellant, G. W. Newcome, as her executor.

On September 12, 1881, the appellant filed an amended original petition, and on May 17, 1882, filed by agreement an amendment to his original amended petition, alleging in his pleading as it then stood, in substance, that the wife was forced to leave her husband January 12, 1867, by his cruel treatment, and that of his kinsmen, introduced by him into the family in 1857, and that at the date of separation the husband and wife owned certain community property, describing it, which the husband retained, excluding her from

the benefits of it, and contributing nothing thereafter to her support, she living with and being supported by her father, the appellant; that after the separation, and prior to the wife's death, the husband acquired certain property, which was also community property, and that the husband retained the custody and control of the children of the marriage against the wife's consent, not allowing her to see and associate with them.

On March 15, 1881, the appellee filed an amended original answer, alleging in substance that she abandoned him without cause about January 12, 1867, and remained away, though he invited her to return; that she aided him in no way in the acquisition of property after she left him, and contributed nothing to the support of the children; that he alone supported the children, alleging the amount expended in that way; that he paid her alimony in the suit filed against him January 12, 1867, giving the amount; that at the date of the separation there were community debts which he paid, stating the amount; that the wife dismissed her first suit because she could not maintain it; alleged his suit against her and the decree granting the divorce, and prayed that appellant be charged with the support of the children, the alimony and the community debts paid according to the wife's proportion of the same.

On May 9, 1882, the appellant filed an amended first supplemental petition, and alleged in substance that the husband retained the custody of the children against the consent of the wife, and voluntarily supported them, though the wife was willing to support and educate them to the best of her ability; that pending the suit by the wife against the husband for divorce, in which the alimony was paid, the husband had separate property and the wife had none; that the alimony was paid under the orders of the court; that the causes which influenced the wife to leave the husband continued to exist after she left, and she would have returned if they had been removed; that the decree of divorce in favor of the husband was null, because Joseph Bledsoe, the judge who rendered the decree, was disqualified by reason of having been of counsel in the cause; that the property in possession of the husband was the outgrowth and increase of the community property on hand at the date of the separation, and the two and four years' statutes of limitation were pleaded against the demands of the husband, on account of alimony and community debts paid, and expenses of rearing and educating the children.

On this state of the pleading the case came to trial May 20, 1882, and resulted in a verdict and judgment for the appellant for $499.03.

The court charged the jury in first subdivision of its charge: "That the decree granting the defendant a divorce, introduced in evidence, established the fact that Nancy J. Light abandoned D. W. Light without sufficient cause. You will, therefore, in the consideration of the testimony, confine your inquiry to such acquisitions of property as were made by the husband and wife up to the date of such abandonment." . . .

In the suit by the wife against the husband, begun August 22, 1867, for divorce, on the ground of cruel treatment, and for a division of the community property, Joseph Bledsoe was of counsel for the husband, and himself prepared and placed among the papers in the case an answer for the husband, alleging as a defense to the action that the wife had abandoned the husband without cause; and Joseph Bledsoe was the judge who rendered the decree of divorce in favor of the husband, in the second suit, on the ground of abandonment without cause.

*Woods, Wilkins & Cunningham,* for appellant, filed an exhaustive brief.

*Hare & Head,* for appellee

I. To disqualify a judge, he must have been of counsel in the particular case then before the court. It is not sufficient that he has been of counsel in another case between the same parties. H. & T. C. R'y Co. v. Ryan, 44 Tex., 426; Taylor v. Williams, 26 Tex., 583; McFadden v. Preston, 54 Tex., 403; Glasscock v. Hughes, 55 Tex., 461.

II. The decree of divorce having found that Nancy Light abandoned her husband without cause, was conclusive of those facts in this case. Freeman on Judgments, secs. 249, 253–259.

III. If Nancy Light abandoned her husband, and remained away from him without cause, the property accumulated by him after such abandonment would not be community, and she would have no interest therein. Wheat v. Owens, 15 Tex., 241.

IV. The court having charged the jury that the decree of divorce conclusively established that Nancy Light abandoned her husband without cause, a charge submitting to the jury the other evidence in the case as to the abandonment would have been improper.

BONNER, ASSOCIATE JUSTICE.— The constitutional provision invoked in this case reads as follows: "No judge shall sit in any case wherein he may be interested, or where either of the parties may be

connected with him by affinity or consanguinity within such degree as may be prescribed by law, or where he shall have been counsel in the case." Const. 1876, art. V, sec. 11; R. S., art. 1090.

The first suit for divorce was brought by Nancy J. Light, now deceased, against the appellee, D. W. Light, on the ground of cruel treatment. That suit was dismissed, and subsequently the second suit for divorce was brought, in which the attitude of the parties was reversed, D. W. Light being the plaintiff and Nancy J. Light the defendant. The second suit was based on the ground of abandonment, and resulted in a verdict and judgment for the plaintiff, D. W. Light. The honorable judge who presided on the trial of this second suit was the attorney for the husband, D. W. Light, defendant in the first suit. Ostensibly the issue in the second suit — that of voluntary abandonment on the part of the wife — was different from that in the first — cruel treatment on the part of the husband; yet if in fact the abandonment was caused by the cruel treatment of the husband, he was not entitled to a decree in his favor, as the abandonment would not, in a legal sense, have been voluntary. He defended the first suit on the ground that he was not guilty of cruel treatment, and hence that the wife was not justified in leaving him.

The present or third suit in which the same judge recused himself, was brought by the wife for a partition of the community property. This she sought also in the first suit, which was dismissed, but it was not made an issue in the second. During the pendency of this, the third suit, the wife died, and it was subsequently prosecuted by the appellant Newcome, as the executor of her estate.

It will be thus seen that the parties to all three of the suits were the same, either in their own individual rights or as privies; the object and the issues in their legal bearings and connections in the first two suits were so intimately blended as to be virtually the same; and the partition sought in the third was but a statutory result and incident of the first two. Pasch. Dig., art. 3452.

On the trial of the present suit, the court charged the jury "That the decree granting the defendant a divorce, introduced in evidence, established the fact that Nancy J. Light abandoned D. W. Light without sufficient cause. You will, therefore, in the consideration of the testimony, confine your inquiry to such acquisitions of property as were made by the husband and wife up to the date of such abandonment." . . .

This charge presents the question of the validity of the decree granting the divorce in the second suit; if valid, the charge was

correct; if not, then no such legal result would follow as therein announced, and it would be incorrect.

Under the facts, we are of opinion that the presiding judge had "been counsel in the case" in the second suit, in contemplation of the constitutional provision above quoted.

. The importance of the question involved, in view of its probable application to other cases, has caused us to hesitate in its decision, and to carefully examine and re-examine the authorities to which we have access bearing upon the subject.

These authorities are generally upon the subject of disqualification by reason of interest or relationship, the usual grounds at common law. Disqualification by reason of having been of counsel, relied on in this case, seems to be of recent origin and created by express constitutional or statutory provision. As it may exist independently of relationship or pecuniary interest in the result, it was doubtless based upon considerations of supposed bias, partiality or prejudice, arising from the relationship of client and attorney, which may reasonably be presumed might influence the action of the judge.

A brief examination of a few leading authorities upon the common law disqualifications of relationship and interest will aid in a proper disposition of this case.

In the very interesting and instructive case of Oakley v. Aspinwall, 3 Comst. (N. Y. Court of Appeals), 547, it was decided that, where a judge was disqualified by reason of consanguinity to one of the parties, he could not sit even by consent of both, and this though the party to whom he was related was indemnified against the consequences of the suit. It was said that "the first idea in the administration of justice is, that a judge must necessarily be free from all bias and partiality. He cannot be both judge and party, arbiter and advocate, in the same cause. Mankind are so agreed in this principle, that any departure from it shocks their common sense and sentiment of justice. . . . Partiality and bias are presumed from the relationship or consanguinity of a judge to the party. This presumption is conclusive and disqualifies the judge. . . . Where no jurisdiction exists by law it cannot be conferred by consent, especially against the prohibitions of a law which was not designed merely for the protection of the party to a suit, but for the general interest of justice. It is the design of the law to maintain the purity and impartiality of the courts, and to insure for their decisions the respect and confidence of the community. Their judgments become precedents which control the determination of subse-

quent cases; and it is important in that respect that their decisions should be free from all bias. After securing wisdom and impartiality in their judgments, it is of great importance that the courts should be free from reproach or the suspicion of unfairness. The party may be interested only that his particular suit should be justly determined; but the state, the community, is concerned not only for that, but that the judiciary shall enjoy an elevated rank in the estimation of mankind."

In the case of Wash. Ins. Co. v. Price, 1 Hopkins' Ch., 1, the question was, whether the chancellor, being a stockholder in the corporation, could sit in the case. It was decided that he could not. In the opinion it is said that "though the principle that a party can never act as judge is not declared by our constitution or statutes, yet, as it is a maxim of universal justice, and is undoubted law in England, it exists here as it exists there, a rule of the common law. It is not left to the discretion of a judge, or to his sense of decency, to decide whether he shall act or not; all his powers are subject to this absolute limitation; and when his own rights are in question, he has no authority to determine the cause. . . . A failure of justice may take place if he should not act, as it may also occur if he should decide his own cause; but it belongs to the power which created such a court to provide another in which this judge may be a party; and whether another tribunal is established or not, he at least is not intrusted with authority to determine his own rights or his own wrongs."

In cases of disqualification in this state, the remedy under our practice is simple — by the selection of a special judge or change of venue.

The question has been several times before the supreme court of Alabama. The case of Heydenfeldt v. Towns, 27 Ala., 423, arose upon the question of disqualification by reason of interest in the result. This case is valuable because it draws clearly the line of distinction between those judgments voidable only by reason of the common law disabilities, and those absolutely void by reason of statutory inhibition. It is said that "the general rule unquestionably is, that it is improper and irregular for a judge to try any cause in which, under the law, he has an interest which would disqualify him as a witness. Dimes v. The Grand Junction Canal Co., 16 Eng. L. & Eq., 63. . . . If the judge is by statutory inhibition deprived of authority to act, then the proceedings are void (Clanuch v. Castleberry, 23 Ala., 85); but where there is no prohibition by law, the proceedings are voidable only, and are valid until

avoided. Dimes *v.* Canal Co., *supra.* Were it otherwise, the greatest inconvenience and difficulty would ensue, since, in most cases, the parties acting under the proceedings would be ignorant of the want of authority until the act was done. The case we have last referred to is a clear and direct recognition of the rule, with the limitation we have expressed, and is entitled to the highest consideration, being the judgment of the House of Lords, consisting of the Lord Chancellor, Brougham, and Campbell, assisted by the judges, after full discussion by eminent counsel, the case itself being one of great interest and importance."

This distinction between the common law and statutory inhibitions has been recognized and acted upon in a number of cases. Mr. Freeman, in his valuable work on Judgments, has collected many authorities on this general subject. As the result of these he says: "But the general effect of the statutory prohibitions in the several states is undoubtedly to change the rule of the common law so far as to render those acts of a judge, involving the exercise of judicial discretion, in a case wherein he is disqualified from acting, not voidable merely, but void." Freeman on Judgments, § 146.

This distinction has in effect been recognized by this court. In Garrett *v.* Gaines, 6 Tex., 435, the honorable judge presiding had been of counsel, and by mistake made an order dismissing the cause for want of prosecution. At a subsequent term he made another order reinstating the cause. Held, that the first order was void on account of the incompetence of the judge.

In the case of Chambers *v.* Hodges, instituted January, 1851, the question of the validity of a judgment rendered at the fall term, 1842, was under consideration. That judgment was attacked on two grounds: *first*, that the presiding judge had been of counsel; *second*, that he was interested in the result. Held that, under the laws in force at the date of that judgment, there was no provision which forbade a judge of the district court to sit in a case in which he had been counsel, though the state constitution subsequently prohibited it. But that the statute then in force did, in express terms, make interest in the result such a disqualification as to require the judge to alternate with some other one. Laws of Republic, vol. 3, 32, sec. 8.

The case was decided upon the second ground, that of interest, and it was said that this rendered the judgment "a nullity, and left the case remaining undisposed of as completely as if the judge had not been present at the court."

In that case, as in Oakley *v.* Aspinwall, *supra,* the disqualifying

interest of the judge was sought to be removed by consent, but the reversal was placed upon the same high grounds of public policy. It was said that "the consent of parties could not remove his incapacity or restore his competency against the prohibition of the law, which was designed, not merely for the protection of the party to the suit, but for the general interest of justice." Chambers v. Hodges, 23 Tex., 583; Gay v. Minott, 3 Cush., 354. We find in Cooley's Const. Lim. (4th ed.), note 1, 517, reference to the case of Reams v. Kearns, 5 Cold., 217 (to which we have not access); to the effect that, when the judge had previously been of counsel, the judgment was a nullity.

In Taylor v. Williams, 26 Tex., 583, and R'y Co. v. Ryan, 44 Tex., 426, the judge had not been of counsel in the particular case; and in McFadden v. Preston, 54 Tex., 403, he was interested in the general question only, which at common law would not be sufficient to disqualify him as a witness. 1 Greenl. Ev. (13th ed.), § 389.

Although the high character of the learned judge who presided on the trial of the second suit for divorce precludes the belief that he was intentionally biased in his judgment by reason of having been counsel for D. W. Light, yet the above decisions force us to the conclusion that, upon high grounds of public policy, he must be held so expressly disqualified as to render the judgment in that case not conclusive between these parties, and that consequently the court erred in the above charge to the jury.

This is considered by the appellant as the important question involved, and its decision may so materially change the aspect of the case as to render it unnecessary to decide the other novel questions presented.

For this error in the charge, the judgment of the court below is reversed and the cause remanded.

                 Reversed and remanded.

[Opinion delivered December 5, 1882.]