FRED FRY, INDIVIDUALLY AND AS TEMPORARY ADMINISTRATOR OF THE ESTATE OF FRANCIS FRY, DECEASED, ET AL. v. MRS. FANNIE TUCKER ET AL.

No. A-1101. Decided April 23, 1947.
Rehearing overruled June 11, 1947.
(202 S. W., 2d Series, 218.)

*Simon, Wynn, Sanders & Jones,* of Fort Worth, *Vinson, Elkins, Weems & Francis, C. E. Bryson, C. A. Bryson, Wm. A. Vinson, W. H. Francis, Jr.,* and *P. Harvey,* all of Houston, for petitioners Fred Fry and others.

*Summers A. Norman,* of Jacksonville, *J. W. Locket,* for Wright Land Company and others, *DeLange, Beman & Hudspeth* and *Albert J. DeLange,* for G. H. Spencer and others, *Kayser, Liddell & Austin* and *Dwight Austin,* for Danciger Oil & Refineries, *Norman J. Bering,* for Mrs. Nannie Tucker, *Abe Wagner,* for the Behnes and others, *Fountain, Cox & Gaines* and *Joyce Cox,* all of Houston, and *Donald Campbell, Victor C. Mieher, L. A. Thompson* and *Harry D. Paige,* all of Tulsa, Okla,, of Counsel, for Stanolind Oil and and Gas Company and Amerada Petroleum Corp., respondents.

MR. JUSTICE SHARP delivered the opinion of the Court.

This appeal involves three separate suits, which were by the trial court, over the objection of certain petitioners, ordered

jointly tried. The three suits involved certain probate orders in the Probate Court of Cherokee County in a cause numbered 17, and styled Estate of Francis Fry, Deceased, which on appeal to the District Court of Cherokee County were set aside and the administration on the estate ordered closed. The cases were brought from the probate court to the district court by three proceedings: (1 Writ of certiorari filed by Mrs. Fannie Tucker et al to the probate court's order appointing J. R. Hill administrator de bonis non, No. 15,748; (2) appeal by Stanolind Oil and Gas Company et al from the probate court's order refusing upon motion to set aside the appointment of J. R. Hill as administrator and to order the estate closed, No. 15,748-A; and (3) appeal by persons who contested the continuance of administration in the first two proceedings from the probate order appointing Fred Fry temporary administrator upon Mr. Hill's death, and refusing to close the administration, No. 15,748-B.

Based upon the findings of the jury, the trial court entered judgment that administration on the estate was closed. An appeal was made, and the Court of Civil Appeals affirmed the judgment of the trial court in Cause No. 15,748-B, but reversed and remanded Causes Nos. 15,748 and 15,748-A, because the trial court judge's wife was a cousin of the wife of C. R. Waites, one of the parties involved in the suit. 197 S. W. (2d) 375.

The controlling question presented here is whether the Court of Civil Appeals was correct in holding that the trial judge was disqualified to sit in the trial of Causes No. 15,748 and No. 15,748-A; and, if so, whether this disqualification extends to Cause No. 15748-B, jointly tried with Causes No. 15,748 and No. 15,748-A.

Many litigants are involved in this suit, and the basis of the controversy is the dispute between two groups over title to land in Harris County. One group, who will be referred to as the Tucker group, claim title under conveyance by persons asserted to be the sole heirs of Francis Fry and his son, Sam Houston Fry. The other group, referred to here as the Fry group, claim to be the paternal heirs of Francis Fry and Sam Houston Fry.

Francis Fry, a citizen of Cherokee County, died intestate in 1856, and his son died a few years thereafter. A month after the death of Francis, his brother-in-law was appointed and quali-

fied as administrator of the estate; and he subsequently died in 1895. In March, 1942, J. R. Hill made application and was appointed by the Probate Court of Cherokee County administrator de bonis non of the estate, and he intervened in various trespass to try title actions then pending in Harris County between members of the above-mentioned two groups. The order of the probate court appointing Hill administrator de bonis non of the estate of Francis Fry, deceased, gave rise to the proceedings which are now before us.

Certain members of the Tucker group filed a motion in the probate court to set aside the appointment of Hill and to declare the administration on the estate closed. This motion was resisted by all members of the Fry group, except Fred Fry as temporary administrator, and he was not then serving in that capacity. Among the several hundred who joined in the contest of this motion was C. R. Waites, whose wife undisputedly was related by affinity within the third degree to the trial judge of the district court. The motion was denied by the probate court, and an appeal was taken to the district court.

Before the appeal papers reached the district court, other members of the Tucker group petitioned the district court for a writ of certiorari to review the action of the probate court in appointing Hill administrator. The sole respondent named in this petition was Hill, as administrator de bonis non. This is the second suit herein involved.

The third suit was occasioned by the death of J. R. Hill in November, 1944. An application was filed by Fred Fry in the probate court in which he sought to be appointed administrator de bonis non of the estate of Francis Fry, or, in the alternative, temporary administrator pending the disposition of the contest over the appointment of J. R. Hill. The latter request was granted, and an appeal perfected from this order appointing Fred Fry temporary administrator.

With these three cases in the district court, a motion to consolidate them was overruled by the trial judge, but they were ordered to be jointly tried; and thereafter the court made an order numbering them as follows: the certiorari case, No. 15,748; the motion proceeding, No. 15,748-A; and the application for appointment of temporary administrator, No. 15,748-B. On motion for new trial, the relationship of the trial judge to Mrs. Waites was raised for the first time. The motion for new

trial was overruled, but on appeal to the Court of Civil Appeals the trial judge was held disqualified in Case No. 15,748 (the certiorari case) and in Case No. 15,748-A (the motion case), the same being reversed and remanded. Case No. 15,748-B, however, was affirmed.

Some of the orders of the trial judge evidence his attempt to keep the proceedings of the three cases separate. However, a single judgment was rendered in the three cases, and it clearly appears, when the entire record is considered, that the intention to keep the proceedings in the three cases separate was departed from in the judgment rendered.

The judgment which was entered, after stating the names and numbers of each of the three suits, divided the parties into seven groups, and stated in which cause the said groups by their attorneys appeared. The First and Third groups were members of the Tucker group, and the other groups were conmprised of various members of the Fry group; the Second group was Fred Fry as temporary administrator; the Fourth and Fifth groups were the numerous members of the Fry group; the Sixth group was a surety on a probate bond; and the Seventh group were the unknown heirs of various persons.

The judgment recites the personal appearance of C. R. Waites and the other petitioners in Causes No. 15,748-B and No. 15,748. C. R. Waites is expressly named as a party of the Fourth group, and the judgment, after setting out the names of all the parties in that group, recites that the parties in the Fourth group "are appellees in cause numbered 15,748-A and who appeared also in causes numbered 15,748 and 15,748-B." The judgment recites that those in the Second, Fourth, Fifth, Sixth, and Seventh groups are designated as applicants, and those in the First and Third groups as contestants. The judgment, after reciting that the law and facts are with the contestants, concludes as follows:

"That the judgment is entered as the judgment of the Court in each of the above captioned and numbered Causes, and a copy thereof shall be certified to the Probate Court of Cherokee County, for its observance.

"The costs of each of the above proceedings are taxed against the persons in Groups Second, Fourth, Fifth and Sixth, for which let execution issue."

The effect of the recitals in the judgment rendered in the three cases is obvious. C. R. Waites is admittedly in the Fourth group. All of the other petitioners are in one of the groups mentioned in the judgment, and a personal judgment is rendered against each of them for the costs in each of the three cases. The judgment decreed that all of the persons mentioned in the Second, Fourth, Fifth, and Sixth groups were taxed with all of the costs in Causes Nos. 15,748, 15,748-A, and 15,748-B. This means that a personal judgment was taken against C. R. Waites in those causes. The judgment decreed that C. R. Waites was not an heir of Francis Fry, nor of his son Sam Houston Fry, and it can be urged that there was an adjudication of heirship against C. R. Waites and the other petitioners, and in favor of the respondents, in each of the three causes. It was also ordered that the administration of the estate of Francis Fry, deceased, be closed.

■ The Court of Civil Appeals held that while the trial judge was disqualified to sit in the trial of Causes Nos. 15,748 and 15,748-A, he was not disqualified to try Cause No. 15,748-B, because Waites was not a party to that suit. We do not agree with this holding. We should have to ignore the recitals contained in the judgment to affirm the holding of the Court of Civil Appeals. The judgment, after naming those in the Fourth group, which included C. R. Waites, recites "who are appellees in Cause No. 15,748-A, and who appeared also in Causes No. 15,748 and No. 15,748-B." The decree with respect to costs read: "The costs of each of the above proceedings are taxed against the persons in Groups Second, Fourth, Fifth and Sixth, for which let execution issue."

It is admitted that the wife of the trial judge and the wife of C. R. Waites are first cousins. This being true, the trial judge was powerless to enter any order in Causes No. 15,748-A, either for or against C. R. Waites, which would affect the rights of his wife, and he was powerless to enter any similar order in either Cause No. 15,748 or Cause No. 15,748-B.

The public policy of this State relating to the disqualification of a judge to sit in the trial of a case is plainly expressed in both the Constitution and the Statutes. Section 11 of Article V of the Constitution provides that: "No judge shall sit in any case wherein he may be interested, or where either of the parties may be connected with him, either by affinity or consanguinity, within such a degree as may be prescribed by law, or when he shall have been counsel in the case. * * *"

Article 15 of the Revised Civil Statutes of 1925 reads: "No judge or justice of the peace shall sit in any case wherein he may be interested or where either of the parties may be connected with him by affinity or consanguinity within the third degree, or where he shall have been counsel in the case."

██ The rules announced in the Constitution and Statutes upon this subject are expressed in unconditional language, and are regarded as mandatory and to be rigidly enforced. It has long been the settled rule in this State that any order or judgment entered by a trial judge in any case in which he is disqualified is absolutely void. Postal Mut. Indemnity Co. v. Ellis, 140 Tex. 570, 169 S. W. (2d) 482; Templeton v. Giddings (Tex. Sup. Ct.), 12 S. W. 851; Burks v. Bennett, 62 Tex. 277; Newcome v. Light, 58 Tex. 141, 44 Am. Rep. 604; Slaven v. Wheeler, 58 Tex. 23; Grogan v. Robinson (Civ. App.), 8 S. W. (2d) 571 (error refused); 25 Tex. Jur., p. 299, sec. 53, and cases cited in the footnote. Furthermore, the disqualification of a judge can not be waived in order to give validity to his actions. Postal Mut. Indemnity Co. v. Ellis, 140 Texas 570, 169 S. W. (2d) 482; City of Dallas v. Peacock, 89 Texas 58, 33 S. W. 220; Newcome v. Light, 58 Texas 141, 44 Am. Rep. 604; Seabrook v. First Nat. Bank (Civ. App.), 171 S. W. 247; 25 Tex. Jur., p. 303, sec. 55. And the question of his disqualification may be raised subsequent to his actions. Milan v. Williams, 119 Texas 60, 24 S. W. (2d) 391; Grogan v. Robinson (Civ. App.) 8. S. W. (2d) 571 (error refused); 25 Tex. Jur., p. 304, sec. 55.

█ The rule disqualifying a judge from sitting in the trial of a case has been applied in many instances. His disqualification by rule prevents a judge from deciding any question affecting any person directly interested in the subject matter and result of the suit, regardless of the appearance or nonappearance of the person's name in the record. The rule has been applied in a case where the community rights of a wife of one of the parties to the suit would be affected by the judgment, although her name was not mentioned in the pleadings: Schutze v. McLeary, 73 Texas 92, 11 S. W. 924; Jordan v. Moore, 65 Texas 363; Seabrook v. First Nat. Bank (Civ. App.), 171 S. W. 247; Gulf, C. & S. F. R. Co. v. Looney, 42 Civ. App. 234, 95 S. W. 691; 25 Tex. Jur., p. 284, sec 41. Under this rule any order taxing costs against C. R. Waites would affect the community rights of his wife.

Respondents contend that the trial judge who tried these cases did not know that he was disqualified; that the com-

munity property owned by C. R. Waites and wife at that time was very limited; that it took weeks to try the three cases; and that the possibility of collecting the costs taxed by the court against C. R. Waites and his wife was doubtful. These facts would in no way abrogate the rule. The test is, was the judge disqualified at the time the cases were tried? If so, any judgment rendered by him was absolutely void, and not binding on the parties involved. Litigants are entitled to have their cases tried by a judge qualified under the law, so that not even the slightest suspicion might attach to his actions.

The Court of Civil Appeals correctly held that the trial judge was disqualified to try Causes Nos. 15,748 and 15,748-A, but erroneously held that he was not disqualified to try Cause No. 15,748-B. The judgment of the Court of Civil Appeals holding that the trial judge was disqualified in Causes Nos. 15,748 and 15,748-A is affirmed, but its holding that the trial judge was not disqualified in Cause No. 15,748-B is reversed, and the causes are remanded to the trial court for further proceedings.

Opinion delivered April 23, 1947.

Rehearing overruled June 11, 1947.

MR. JUSTICE SMEDLEY dissenting.

For the reasons hereinafter given, I respectfully dissent from both rulings made by the majority opinion: the first that if the trial judge was disqualified in one of the three cases that were tried together but not consolidated, his disqualification extended to the other two cases; and the second that the trial judge was disqualified in one of the cases.

First, it is to be observed that two applications for writs of error were filed, one by Mrs. Fannie Tucker et al, which was granted on two assignments of error complaining of the holding of the Court of Civil Appeals that the trial judge was disqualified because of the relation of his wife to the wife of C. R. Waites, a party to one of the cases, and the other application filed in behalf of Fred Fry et al, which was granted because of the granting of the Tucker application. Since the majority opinion refers to Fred Fry et al as petitioners and to Mrs. Tucker et al as respondents, that general description will be followed herein to avoid confusion. The ruling of the majority opinion that the disqualification of the trial judge, if

he was disqualified in one of the cases, extended to the other two, will be first discussed.

Three separate suits were pending in the district court of Cherokee County, brought there by certiorari and appeal from three separate orders of the probate court, two of them relating to the appointment by the probate court on May 25, 1942, of J. R. Hill as administrator de bonis non of the estate of Francis Fry, who died in the year 1856, and one of them relating to the appointment on January 16, 1945, of Fred Fry as temporary administrator of the estate of Francis Fry. It appears from the applications that the two appointments were sought, one by Hill and the other by Fred Fry after Hill's death, primarily for the purpose of filing and prosecuting in the district court of Harris County, for the benefit of persons claiming to be heirs of Francis Fry, suits for the recovery of valuable land against persons and corporations possessing the land and claiming title to it under Francis Fry. In the three suits in the district court of Cherokee County, Fred Fry and other parties claiming to be heirs of Francis Fry, and who are referred to in some of the documents in the transcript as applicants, are seeking to revive or to continue administration of Francis Fry's estate; and Mrs. Tucker and others, being the parties possessing the land and claiming it under Francis Fry, and who are referred to in the transcript as contestants, are seeking to terminate administration of Francis Fry's estate. It is also apparent from the record that two important material questions are presented in each of the three cases, first, whether Fred Fry and the others by whom revival or continuance of administration is sought, are heirs of Francis Fry, and second, whether there was when Hill was appointed administrator, or has since been, a necessity for administration of Francis Fry's estate.

Before the three cases were called for trial in the district court respondents, Mrs. Fannie Tucker et al, filed and presented, under Rule 174, a motion for the joint trial or the consolidation of the three cases. This motion was resisted by petitioners, Fred Fry et al. The trial court overruled that part of the motion which sought to consolidate the cases, but granted the motion that they be tried jointly, finding "that the said three cases could be tried jointly and at the same time as three separate cases without requiring any of the parties to waive any rights and without prejudice to the rights of the parties thereto, and just as if each case were separately tried." The order granting the motion for joint trial further provides "that the

said cases shall be tried as separate cases and that the same shall not be considered as consolidated for any purpose, and that separate judgments shall be rendered in each of said causes." Thereafter, on the motion of petitioners, Fred Fry et al, the court made an order requiring the clerk to give each of the three cases a separate number, and directing that any instrument filed or to be filed should be considered as filed in each of the three cases and should be so designated in its caption. The cases were accordingly separately numbered as follows: No. 15748, referred to in the majority opinion and herein as the certiorari proceeding; No. 15748-A, referred to as the motion proceeding; and No. 15748-B, referred to as the temporary administrator appointment.

The trial of the cases before a jury began on August 27, 1945. Verdict favorable to respondents, Mrs. Tucker et al, was returned October 5, 1945, and on November 10, 1945, judgment on the verdict was rendered by the court in each of the three causes in favor of respondents, Mrs. Tucker et al. One charge was given by the court to the jury, submitting special issues. Its caption bears the number and style of each of the three cases, and the introductory paragraph states that "these causes are submitted to you on special issues, etc." Most of the issues relate to kinship, whether certain named persons are sons or daughters of other persons. By one of the answers the jury found that the debts listed against the estate of Francis Fry by the administrator Patton have been paid, and by another answer, that Patton as administrator of the estate joined in the sale in 1893 of certain real estate in Harris County belonging to the estate.

One judgment was prepared for entry in each of the three cases. Its caption, like that of the verdict, bears the number and style of each of the cases. It begins with the statement that "the above causes came on for trial." This is followed by an enumeration of the parties who appeared by their attorneys, in seven separate groups, with statements showing in which cause or causes the persons and corporations named in each group were parties. The judgment again recites the court's action on the motion for consolidation or joint trial, repeating and making reference to the order duly entered "that these causes be jointly tried but not consolidated." The judgment recites that in accordance with the jury's verdict the court finds that neither Fred Fry nor any other person named in the fourth group is related to or is an heir of Francis Fry; that neither W. N. Hopkins nor any other party named in the fifth group is re-

lated to or is an heir of Francis Fry; and that none of the parties to the suit is related to or is an heir of Francis Fry. It is ordered and adjudged as follows: that administration on the estate of Francis Fry is and the same is hereby ordered closed; and that the several orders of the probate court of Cherokee County which purported to continue the administration and appointed Hill and Fred Fry administrators be set aside. It is ordered "that the judgment is entered as the judgment of the court in each of the above captioned and numbered causes." Costs are taxed as hereinafter shown.

After the causes were tried and the judgments rendered, petitioners Fry et al, by motions for new trial, made for the first time the contention that the trial judge was disqualified to try the three cases because the wife of the judge is the first cousin of the wife of C. R. Waites, who (C. R. Waites) was a party to cause No. 15748-A, the motion proceeding. Proof was made on the hearing of the motion for new trial that the wife of C. R. Waites is the first cousin of the wife of the trial judge, and that neither the trial judge nor the attorneys who participated in the trial of the cases knew of the relationship until the trial was completed and the judgments were rendered.

The entire record in the case, including the trial court's order overruling the motion to consolidate but granting the motion for joint trial and the judgment, shows that there was no consolidation of the three causes, but that, with a very considerable saving of time and expense, they were merely tried at the same time, as is permitted by Rule 174; and that the trial judge was careful to try them "just as if each case were separately tried." The Court of Civil Appeals, after quoting from the judgment and the orders of the trial court, very correctly concluded that the trial court intended to keep the cases segregated, and that the trial was not had upon a consolidated action. 197 S. W. (2d) 375, 379.

The majority of this Court, instead of looking to the entire record, took two brief recitals from the trial court's judgment, which was rendered and entered in each of the three cases, as evidence that the court by the judgment consolidated the three cases; and this notwithstanding the fact that the judgment itself repeats the court's order refusing to consolidate the cases and expressly provides that the draft of the judgment be entered as the judgment of the court in each of the three causes which are separately designated by number and name in its caption.

One of the recitals relied upon by the majority opinion as proving a consolidation of the three causes is taken from that part of the trial court's judgment in which for convenience the many parties are listed by groups. C. R. Waites is listed with many other parties in the fourth group. He was a party in cause No. 15748-A, the motion proceeding, having appeared by answer, filed for him and many others by his attorneys, in the probate court to the motion filed by G. H. Spencer and others to set aside the order appointing J. R. Hill administrator de bonis non; and he, C. R. Waites, became an appellee in the cause numbered 15748-A when Spencer and others appealed to the district court from the order of the probate court overruling their motion. Waites was not a party in cause No. 15748 nor in cause No. 15748-B. At the end of the paragraph in the trial court's judgment, which contains a list of parties, including C. R. Waites, in the fourth group, appears the following descriptive recital; "Who are appellees in cause numbered 15748-A and who appeared also in causes numbered 15748 and 15748-B."

The majority opinion of this Court holds that the quoted recital means that C. R. Waites and all the others listed in the fourth group became and were parties to the other two causes as well as to cause No. 15748-A, and that thus there was a consolidation of the three causes, and that the trial judge was disqualified in the other two causes as well as in cause No. 15748-A. The recital is not reasonably subject to that construction when read as a part of the whole judgment and in the light of the entire record. Waites was not in fact a party to the other two causes, and there is nothing in the record, unless it is this bare recital, to indicate that he became a party to them or that he in any way participated in the trial of them except that his attorneys were present and took part in the joint trial of the three segregated cases.

It is true that ordinarily a recital in a judgment that a party appeared in person or by attorney means that he became a party to the case so that he would be bound by the judgment rendered. In this trial, the attorneys of all of the many parties to the three cases were present and participated in the joint trial of the three separate cases, in which trial, as appears from the pleadings and the verdict, most or much of the evidence offered and arguments made were relevant and material in all of the cases and, on a joint trial, must have been offered and made for all of the cases and not identified or specified as intended for any one of them. The recitals in the judgment that parties to one of the causes "appeared also" or "also ap-

peared as parties interested" in the other causes are reasonably, and in my opinion correctly, understood to mean that the parties participated in the joint trial of the other causes with the cause in which they in fact were parties, rather than that they appeared in the other causes in the sense that they made themselves parties to them. The other construction, that given by the majority opinion, would contradict the repeated statements in the record that the causes were not consolidated but were tried jointly as separate causes.

The trial court, in the last paragraph of the judgment rendered and entered in each of the three causes, thus assessed the costs: "The costs of each of the above proceedings are taxed against the persons in groups second, fourth, fifth and sixth." The parties listed in the four groups are those who have been referred to as applicants and who seek to have administration of the estate of Francis Fry revived or continued. The verdict and the judgment were against them. As the judgment shows, Fred Fry, the party named in the second group, is a party to all three of the causes; and the parties listed in the fourth, fifth and sixth groups, including Waites, are parties only in cause No. 15748-A. The majority opinion expressed the conclusion that there was a consolidation of the three causes by reason of the assessment of the costs of court in such manner as to charge the parties in the fourth, fifth and sixth groups, who were parties only in cause No. 15748-A, with the costs as well in cause No. 15748 and cause No. 15748-B. Of course the court could not, except erroneously, charge one with the costs in a case to which he was not a party. Given its literal meaning, the language used in the paragraph taxing the costs has that effect, but the error in thus taxing the costs after the completion of the trial does not change what was in fact a joint trial of the separate causes into a consolidation of them for trial. The error may be corrected here by reforming the judgment so as to provide that costs of the trial court be assessed against the parties listed in the second, fourth, fifth and sixth groups by charging them with the costs incurred in the separate cause or causes in which they were parties.

It is further argued that the trial was necessarily the trial of a consolidated action because the judgment rendered and entered in each of the three cases determined issues or questions presented in each of them, that is, the question whether petitioners are heirs of Francis Fry and the question whether there is a necessity for administration of the estate. The presence of issues or questions common to two or more causes affords

a reason for trying them jointly. Nothing in the record suggests that any of the parties to any of the three causes was in the joint trial prevented from offering freely and fully evidence material to his case, or that there was a failure to submit to the jury any material issue raised by his pleading or that his rights were in any way prejudiced by the joint trial. The transcript contains no objection by any of petitioners to the court's charge and no request by any of them for the submission of special issues. There is no statement of facts, and there is only one bill of exceptions in the transcript, that relating to the question as to the disqualification of the trial judge.

In my opinion the trial judge was not disqualified in any of the cases. The provisions of Section 11 of Article V of the Constitution and Article 15 of the Revised Civil Statutes of 1925 are that no judge shall sit in any case where either of the *parties* may be connected with him by affinity or consanguinity within the third degree. Mrs. C. R. Waites, who is a cousin of the wife of the trial judge, is not a party in any of the causes. C. R. Waites is a party in cause No. 15748-A, in which he asserts that he is an heir of Francis Fry and seeks, as an heir interested in Fry's estate, to revive or continue the administration of the estate. If he has or establishes an interest in the estate, it would be his separate property. The only possibility or probability of Mrs. Waites' being affected by the suit is that costs of court assessed against C. R. Waites might be collected out of his and his wife's community property.

In my opinion a correct summary of the decisions of the courts of this State bearing upon the question is substantially this: the disqualification exists when the person related to the judge in the prohibited degree is actually a party to the case, that is, named in the record as such, or when the person related is in legal effect a party, that is, when he is directly interested in the subject of the controversy, the very matter in issue; and the disqualification does not exist when the person related is not thus directly interested, but merely is or may be affected indirectly or consequentially by the judgment.

In the first class, that is where the person related is not actually a party but a party in legal effect, are the following cases: Jordan v. Moore, 65 Texas 363 (the husband, the representative of the community, was suing to enforce a community claim) ; Seabrook v. First National Bank, 171 S. W. 247 (suit against the husband to enforce a community debt) ; Gulf, C.

& S. F. Ry. Co. v. Looney, 95 S. W. 691 (suit by husband for damages, which if recovered would be community property); Stephenson v. Kirkham, 297 S. W. 265, and Grubstake Investment Ass'n. v. Kirkham, 10 S. W. (2d) 184 (suits against a common-law trust association in which all shareholders are partners); Duncan v. Herder, 122 S. W. 904 (suit by widow as survivor in community, where daughter was part owner of property involved); Hodde v. Susan, 58 Texas 389 (trial of right of property, in which judgment was or might be rendered against sureties on claimant's bond); Postal Mutual Indemnity Co. v. Ellis, 140 Texas 570, 169 S. W. (2d) 482 (suit under Workmen's Compensation Law, in which court apportioned one-third of claimant's recovery to his attorneys and authorized execution directly in their favor).

In the second class, where there is no disqualification, because the person related is merely indirectly interested in the controversy and incidentally effected by the judgment, are the following decisions: Winston v. Masterson, 87 Texas 200, 27 S. W. 768 (attorney under contract with plaintiff to receive as a contingent fee one-half of the amount recovered by plaintiff); International & G. N. Ry. Co. v. Anderson, 174 S. W. 305, 327-329 (a suit by nine citizens of Palestine for themselves and all other citizens of the city;) Texas Farm Bureau, etc. Ass'n. v. Williams, 117 Texas 218, 300 S. W. 44 (suit against a Marketing Association, a certificate member of which was related to the judge); and Houston Cemetery Co. v. Drew, 36 S. W. 802, (suit against a corporation, related person being a stockholder).

This suit is in the second class. Mrs. Waites has no interest whatever in the subject matter of the suit or of the controversy, which is the claim of her husband to an interest in Fry's estate as one of his heirs. She could be affected by the suit only incidentally or indirectly, that is, if costs of court assessed against her husband should be collected from community property belonging to her and her husband. Court costs are not part of the subject matter of a suit. They are incidental to the judgment and are awarded as of coure in favor of the successful party against his adversary. Rule 131; United States Casualty Co. v. Hampton, 293 S. W. 260. It is said in Warren v. Shuman, 5 Texas 441, 450, that "The recovery of costs by a defendant is a legal consequence of a judgment upon the matters controverted in his favor." That case holds that a judgment for costs alone is not such a final judgment as can be brought up for revision. See also Eastham v. Salis, 60 Texas 576, 580; Secrest v.

Ledbetter, 106 S. W. (2d) 740. In City of Vernon v. Montgomery, 33 S. W. 606, it is held that it is not necessary to the validity or finality of a judgment that it adjudge costs against either party, because it follows from the statute "as an incident to the judgment" that the successful party recover the costs of his adversary. Since court costs are not of the subject matter of the suit, but only an incident to the judgment, a possibility or probability that, in consequence of a judgment against her husband, costs of court, assessed against him and not against her, might be collected from their community property does not make Mrs. Waite a party to the suit, either actually or in legal effect. She would not be affected directly by the judgment but only indirectly by the result of it, in the collection of court costs assessed against her husband as an incident to the judgment in his controversy.

Petitioners rely primarily upon statements in the opinion written by Chief Justice Stayton in Schultze v. McLeary, 75 Texas 92, 93-94, 11 S. W. 924. The opinion and apparently the pleadings in the case, an original proceeding for mandamus, fail to show clearly the material fact, the subject of controversy in the district court case; and the opinion is therefore unsatisfactory and is not directly an authority applicable to the facts of this case. Unfortunately, the record in that case has been lost so that we cannot know what were the allegations in the petition for the writ.

The statements in the opinion in the Schultze case as to the effect of liability of the community estate for costs upon the question of disqualification of the judge seem to be inconsistent with expressions in the opinion written by the same great judge in Jordan v. Moore, 65 Texas 363, 366. There the wife of the trial judge was related to the plaintiff's wife. The judge was disqualified, the suit being for the enforcement of a community debt. After the ruling on the question of disqualification, the opinion contains the following:

"If the relationship between the wives of the appellee and the county judge is not such as alleged, *or if the fund sought to be recovered would not be community property, these facts may be shown and no disqualification of the county judge would then exist.*" (Emphasis added.)

In the Jordan case there was the same hazard of costs being assessed against the husband as exists in this case. If the fund sought to be recovered would not be community property but

the husband's separate property, costs would be assessed against him as an incident of an adverse judgment. The above quotation from the opinion means that in that event no disqualification of the judge would exist.

The decision made in Winston v. Masterson, 87 Texas ·200, 27 S. W. 768 (also written by Chief Justice Stayton) is that the trial judge was not disqualified to try a case in which the plaintiff's attorney, who was the judge's brother, had a contract to receive as a contingent fee one-half of the amount to be recovered. The attorney was interested in the suit or in its result, but not so directly interested in it and affected by it as to make him a party, and so was a party neither actually nor in legal effect. Criticism of Winston v. Masterson by two court of civil appeals decisions which have been cited above is directed to expressions and a quotation in the opinion which seem to give to the word "parties" used in the Constitution and statute as to disqualification of judges a construction so narrow as to relate only to parties shown by the record as such. It is not believed that the court intended to hold that there is no disqualification when the person related is a party in legal effect. Winston v. Masterson has not been overruled. See Texas Farm Bureau etc. Ass'n. v. Lennox, 117 Texas 94, 297 S. W. 743; Texas Farm Bureau, etc. Ass'n. v. Williams, 117 Texas 218, 300 S. W. 44; Postal Mutual Indemnity Co. v. Ellis, 140 Texas 570, 575, 169 S. W. (2d) 482.

In my opinion, the interest of Mrs. Waites in the instant suit is more indirect and more remote than was the interest of the attorney in the Winston-Masterson case. It must be remembered that the word "parties" and not the word "interested" is used in the provisions of the Constitution and the statute that relate to the disqualification of judges because of kinship. To disqualify the judge the person related to him must be a party, either actually or in legal effect. There is neither necessity nor justification for stretching the meaning of the word "parties" so far as to include one not interested at all in the subject matter of the suit, and who may be affected by the judgment not directly, but only incidentally and indirectly.

In these cases jointly tried there are several hundred parties. For nearly six weeks the cases were tried before a jury. The proof made on the hearing on the motion for new rtial conclusively shows that neither the trial judge nor the attorneys who participated in the trial knew of the relation between Mrs. Waites and the wife of the trial judge until after the trial had

been completed and the judgments rendered, and further, that there is hardly a possibility that even a small amount of costs will or can be collected from community property of Mr. and Mrs. Waites.

Opinion delivered April 23, 1947.