Patricia Eloise PINCHBACK, a Minor, by H. L. Daugherty, as Next Friend and Guardian of her Estate, Appellant,

v.

Mary Frances Bowlin PINCHBACK et al., Appellees.

No. 16150.

Court of Civil Appeals of Texas.

Fort Worth.

Dec. 9, 1960.

Rehearing Denied Jan. 6, 1961.

Marcus, Weller & Evans, and Geo. A. Weller, Beaumont, for appellant.

Howard P. Castle, Orgain, Bell & Tucker and John G. Tucker, Beaumont, for appellees.

Howard Barker and Sloan B. Blair, Fort Worth, amici curiae.

BOYD, Justice.

By will dated June 13, 1946, Seawillow Cunningham Pinchback made the following devise:

"I give, devise and bequeath all my lands and real estate located South of College Street Extension in the Charles Williams League in Jefferson County, Texas, to my beloved children, R. T. Pinchback, Jr., W. P. Pinchback, J. S. Pinchback and Mrs. Nan Oxford, share and share alike, for and during their lifetime with remainder upon their deaths or the death of each one of them to the child or children of each and if either should die leaving no child surviving the share of such child shall pass to my other children or their children." The testatrix died on May 26, 1956, and the will was probated on June 25, 1956.

Patricia Eloise Pinchback was the only child of W. P. Pinchback at the time of the probate of his mother's will. Her mother had died on September 17, 1955. Her father married Mary Frances Bowlin on October 14, 1956.

About July 20, 1957, a boy nine years of age and a girl four years of age, who had been adjudged dependent and neglected and were wards of the court, were permitted to be taken from Fort Worth to the home of W. P. and Mary Frances Pinchback in Beaumont. A petition for adoption of the children was filed by the Pinchbacks on October 4, 1957, in the 17th District Court of Tarrant County. A judgment of adoption was granted on December 9, 1957, and the names of the children were changed to Jimmy Lee and Deborah Mae Pinchback. W. P. Pinchback died on December 12, 1958, leaving a will executed on September 25, 1957, by which Patricia Eloise took nothing.

On December 8, 1959, Patricia Eloise, by H. L. Daugherty as next friend and guardian of her estate, filed in the 17th District court a petition for bill of review to set aside the adoption judgment, naming Mary Frances, Jimmy Lee, and Deborah Mae Pinchback, and Mary Frances Pinchback as guardian of the persons and estate of Jimmy Lee and Deborah Mae, as defendants. It was alleged that: prior to the coming of the adoptive children to their home, W. P. and Mary Frances Pinchback were familiar with the terms of his mother's will; before that marriage, there was a good relationship between Patricia and her father; soon after her marriage, Mary Frances began a course of conduct to prejudice the father against the daughter, and to unduly influence W. P. to disappoint Patricia's hopes for an inheritance from her father and to destroy her vested interest in the estate of her grandmother; Patricia was not consulted about the adoption; she was at all times under disability of minority, and then had no guardian; the court granting the adoption was not advised as to the effect the adoption might have on Patricia's remainder interest in Seawillow's estate; the representations to the investigating officer that Patricia ap-

proved of the adoption, and that W. P. was in good health, were false and fraudulently made for the purpose of influencing the court; the adoption decree was sought and obtained by W. P. and Mary Frances for the purpose of depriving Patricia of ⅔rds of the ¼th interest in the estate devised by her grandmother; in the alternative, in the event W. P. did not deliberately adopt the children for the fraudulent purpose of adversely affecting Patricia's interest, he would not have sought the adoption had his health not been impaired, and had he been advised that the adoptive children would be considered the same as natural children and would take under his mother's will. Prayer was that the adoption judgment be set aside and held for naught; and in the alternative, that it be set aside as to W. P., and left in effect as to Mary Frances.

The defendants filed a motion for summary judgment asking that the petition for bill of review be dismissed and to deny any of the relief sought, and alleged that the plaintiff had no justiciable interest in the subject matter; plaintiff did not appear to have any interest in or in behalf of the adoptive children, her appearance in the case being decidedly against their interest, and she had no standing in court; W. P. Pinchback voluntarily filed the petition for adoption, appeared in court, and participated in all the proceedings; the petition does not allege that it would be to the interest of the adopted children to set the adoption aside, and it was to their best interests that the relief prayed for be denied; it appeared from the petition that the court had jurisdiction of the parties and the subject matter when it granted the adoption; the petition failed to state any grounds upon which the plaintiff would be entitled to any relief sought; and it was prayed that the motion for summary judgment be granted and that the plaintiff be denied any relief sought, and that her petition be dismissed. Affidavits were attached in support of the motion.

The plaintiff filed a reply to the motion for summary judgment, and asked that it be dismissed; she reiterated substantially the allegations of her petition; alleged that she had a justiciable interest in the subject matter; attached affidavits in support of her reply, and moved to strike the defendants' affidavits. She also filed an application for a continuance or postponement of the hearing on motion for summary judgment, alleging that notices to take oral depositions had been timely served, which depositions were to be taken on February 6 and 8, 1960; that the testimony expected to be elicited by the depositions would be material and would raise issues of material fact, setting out in detail claimed materiality of the expected testimony.

On February 4, 1960, the application for postponement was overruled, and the defendants' motion for summary judgment was sustained. The judgment was signed and entered on February 29, 1960. The plaintiff excepted and gave notice of appeal.

Appellant contends that the judgment of adoption and the summary judgment are void because, she says, the trial Judge was disqualified to sit in the case.

On February 11, 1960, appellant filed a verified motion requesting the Honorable Jack M. Langdon, the judge presiding, to enter an order certifying his disqualification to sit in the case, alleging substantially the following: at the conclusion of appellant's presentation of her motion for continuance, and before the motion for summary judgment was granted, Judge Langdon requested counsel for all parties to meet with him in chambers for a conference; the Judge told counsel that he was present at the original discussion regarding the possible adoption of the children by the Pinchbacks; the discussion took place at a Langdon family dinner party in Fort Worth about July 20, 1957, and was participated in by the Judge, his brother-in-law and sister, Mr. and Mrs. Charles Collins of Beaumont, and the Judge's brother, Mr. Charles Langdon. The Judge made arrangements for the children to be taken by Mr. and Mrs. Collins from Fort Worth to the home of the Pinchbacks in Beaumont; the only investigation

at that time was the representations of Mr. and Mrs. Collins concerning the Pinchbacks; Judge Langdon also said that he was a member of the Tarrant County Juvenile Board, and was personally interested in Jimmy; he said he did not know the Pinchbacks at that time, but was now very familiar with the Pinchback "situation" and had since been in their home; he said he believed himself disqualified to try the case on the facts, but would hear argument on the law and then rule on the motion for summary judgment without considering the affidavits in support of the motion or those in opposition thereto; Mr. Weller, counsel for appellant, then said that if the Judge was disqualified on the facts he would be disqualified on the law; the Judge did not believe he was disqualified to hear legal arguments or to rule thereon; counsel for appellant knew of the relationship between the Judge and Mr. and Mrs. Collins and Charles Langdon, but he had no prior knowledge of the Judge's active participation and first-hand knowledge of the facts; at the conclusion of the conference, the hearing was had on the motion for summary judgment and it was granted. It was further alleged that the Judge acted as counsel and counseled the Pinchbacks about the adoption and adoption procedure, all without pay or expectation of reward; his counsel or advice was rendered in the interest of the minors and their prospective adoptive parents and later as adoptive parent; Judge Langdon acted in all candor and with the fairness a judge should have when he advised counsel that he would disqualify in the event of a trial on the facts. Prayer was that the court set the motion for hearing, and that upon hearing the court enter an order certifying his disqualification. An affidavit was attached to the motion to disqualify, which, if true, tended to support some of the allegations in the motion.

On February 26, 1960, Judge Langdon wrote counsel for all parties saying that he had "carefully examined and considered the proposed judgments and correspondence submitted by each of you together with de-fendant's Bill of Exception No. 1 and Motion for Disqualification, and is of the opinion that the judgment proposed by the attorney for the defendant should be entered. Said judgment is therefore being signed and entered as of Monday, February 29, 1960, in order that you may have ample time to perfect any appeal from such judgment. At the same time, the Court is entering an order transferring this case in its entirety to the 67th District Court of Tarrant County for trial on its merits should same become necessary following an appeal.

"It is the opinion of the Court that the Bill of Exception and the Motion for Disqualification contain many incorrect statements and unfounded conclusions. However, in view of the Court's action as above indicated, these matters are now moot.

"There is only one question remaining; it is one of law. I have resolved that question by sustaining the Motion for Summary Judgment. The correctness of this action is the only question to be resolved by the Court of Civil Appeals."

On March 1, 1960, appellant filed a supplemental motion in support of her request that Judge Langdon enter an order of disqualification, in which she alleged that an issue of fact was involved and she was entitled to offer testimony on such issue, and the Judge should testify as to the facts. Prayer was that the court consider the original and supplemental motions as one motion, and set this motion for hearing on its merits for the taking of testimony; "that upon hearing the court enter an order certifying his disqualification to sit in this case for any purpose, and set aside any order heretofore made."

Appellees replied to the motion to disqualify, denying under oath many of the allegations therein, setting out testimony from depositions, denying that the Judge acted as counsel or counseled with the Pinchbacks about the adoption or adoption procedure, denying that the Judge was disqualified, or that he said during the conference that he would be disqualified.

It is not necessary that the formal relation of attorney and client exist in order for a Judge to become disqualified. One who performs acts appropriate to counsel, such as being consulted or giving advice, may thus become disqualified. Johnson v. Johnson, Tex.Civ.App., 89 S.W. 1102.

We cannot say from the record that Judge Langdon was disqualified. He is presumed to be qualified until the contrary is shown. Marsh v. Ferguson, Tex.Civ.App., 262 S.W. 805. But the question presented here is not whether Judge Langdon was disqualified, but whether it was error to refuse appellant a hearing on her motion that he certify his disqualification.

Appellees stress the fact that the motion to disqualify was not filed until after the summary judgment was ordered. They overlook the fact that the existence of a Judge's disqualification may be urged at any time by any party, or by the Judge himself. Fry v. Tucker, 146 Tex. 18, 202 S.W.2d 218; McDonald Texas Civil Practice, Vol. 1, p. 82, sec. 1.24. They further say that appellant's motion, aside from the legal conclusion that the Judge acted as counsel for the Pinchbacks, alleges no facts which, if true, would show his disqualification. "* * * whenever the question is raised, no matter how informally, it is the duty of the judge fully to investigate the matter. Hence, it is never proper to sustain an objection directed merely to the form in which the challenge is presented." McDonald Texas Civil Practice, supra. Before the general demurrer was abolished, it was held that such a demurrer should never be sustained to a suggestion of disqualification, however inaptly drawn. Stephenson v. Kirkham, Tex.Civ.App., 297 S.W. 265, error refused. When there is a dispute as to the facts, the Judge must hear witnesses and receive other evidence offered by those claiming that he is disqualified, as well as by those resisting the challenge. "If his ruling is to rest in part upon his own knowledge, he should in this situation put his own testimony in the record under oath, unless oath be waived, for he cannot foreclose the question by a mere unsworn certificate that he is not disqualified." McDonald Texas Civil Practice, supra. See, also, Slaven v. Wheeler, 58 Tex. 23.

A Judge may not decline to hear evidence even if he personally knows that he is not disqualified. Benson v. State, 39 Tex.Cr.R. 56, 44 S.W. 167.

By letter to the Judge, dated February 22, 1960, appellees' counsel said:

"If any disputed fact question can thus be resolved or eliminated, then, as I understand the law, it would be appropriate for you to go ahead and determine the motion without further hearing. On the other hand, if there are any disputed questions of fact, it would appear that a hearing would have to be held and evidence received, this being the procedure outlined in McDonald Texas Civil Procedure, Vol. 1, section 1.24, pages 82–83."

In overruling the motion to disqualify, the Judge found that it presented no legal grounds for disqualification, that he had not acted as counsel, and that he was not disqualified. In the court's suggested corrections and additions to appellant's bill of exceptions, it was said that "'the Court had in mind that, irrespective of the question of his alleged disqualification, his action in granting or overruling the motion for summary judgment involved in no way the exercise of judicial discretion and instead only constituted the determination of a question of law fully reviewable by the appellate courts of this State.'"

It is the duty of a Judge to preside when he is not disqualified. 48 C.J.S. Judges § 93, p. 1079. And in the disposition of minor children who are wards of the court, a Judge has more latitude for investigation and consultation, perhaps, than in any other type of case. The law makes him interested in the children's welfare, if he were not interested otherwise. Judge Langdon's solicitude for the welfare of the children here involved is in the highest de-

gree commendable. It may be that he was so clear in his knowledge of his own qualification that he thought a hearing would be a waste of time. But it may not be said that a Judge cannot, by consultation and advice, become disqualified even in this kind of a case. The summary judgment is void if he were in fact disqualified. This is so, even if it be the only judgment that could have been properly rendered. Seabrook v. First Nat. Bank of Port Lavaca, Tex.Civ.App., 171 S.W. 247; Lee v. British & American Mortgage Co., 51 Tex.Civ.App. 272, 115 S.W. 320.

We are of the opinion that in refusing a hearing and a full investigation of the suggestion, the learned trial Judge fell into error.

The judgment is reversed and the cause remanded.