IN THE SUPREME COURT OF TEXAS






IN THE SUPREME COURT OF TEXAS
 
════════════
No. 04-0269
════════════
 
Tesco American, Inc. d/b/a/ 
Tesco Williamsen, Petitioner,
 
v.
 
Strong Industries, Inc. and 
Brooks Strong, Respondents
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the First District of 
Texas
════════════════════════════════════════════════════
 
 
Argued February 
17, 2005
 
 
Justice Hecht, dissenting.
 
 

One 
Justice on the court of appeals panel, the author of its opinion,[1] practiced in a 
large firm with two lawyers who, unbeknownst to her, briefly represented two 
parties in this case, withdrawing more than a year before she took the 
bench.  She and her court first learned of this fact after her opinion 
issued, on motion for rehearing, and the court concluded en banc that she was 
not constitutionally disqualified.[2]  The other 
two members of the panel declined to recuse themselves[3] and voted to 
deny the motion for rehearing.  In this Court, the petitioner has raised 
the disqualification issue along with a number of other issues on the merits of 
the appeal, all of which have been fully briefed.  The Court concludes, I 
think correctly, that the author of the court of appeals= opinion was disqualified 
from sitting in the case, but then remands the case to that court to reconsider 
the merits, again, having done so once already on motion for rehearing.  
The other two Justices who participated in the decision before are not required 
to recuse but may continue to sit on the case, even though their having denied 
rehearing before leaves little doubt as to the outcome on remand.  They may 
even reissue the same opinion, perhaps this time per curiam.  If this 
futile exercise does not exhaust the parties, they will return, almost certainly 
with the same issues and the same arguments, and all the Court will have 
accomplished is to waste everyone=s time and resources.  
The merits of the case are fully and fairly before us, and I would decide them 
now.  Accordingly, I respectfully dissent.

I 
agree with the Court that before she took the bench, Justice Higley was 
“counsel” in this case within the meaning of article V, section 11 of the Texas 
Constitution, which states in part that “[n]o judge shall sit in any case 
. . . when the judge shall have been counsel in the case.”[4]  Though 
she never actually represented respondents Strong Industries, Inc. and 
Brooks Strong when she was in practice, two lawyers in her firm did, without her 
knowledge, for a few months before any briefs were filed in the court of 
appeals, and we held in In re O=Connor[5] that for 
purposes of article V, section 11, “counsel” includes a lawyer in the same firm 
with a party=s 
counsel.  The court of appeals read O=Connor as applying only 
Rule 18b(1)(a) of the Texas Rules of Civil Procedure, which expressly includes 
counsel=s 
associates,[6] and not the 
Constitution,[7] but the Court 
stated quite clearly:
 
Rule 18b(1)(a) incorporates [the constitutional] language, and 
also provides that a judge is disqualified if “a lawyer with whom [the judge] 
previously practiced law served during such association as a lawyer concerning 
the matter.”  Rule 18b(1)(a) accordingly recognizes that a judge is 
vicariously disqualified under the Constitution as having “been counsel 
in the case” if a lawyer with whom the judge previously practiced law served as 
counsel to a party concerning the matter during their association.[8]
 

The 
court of appeals interpreted “under the Constitution” to mean that the rule had 
been adopted with constitutional authority,[9] but 
grammatically, the phrase modifies “disqualified”, not “rule”.  Moreover, 
if, as the court of appeals believed, the rule enlarged the constitutional 
grounds for judicial disqualification, it is not clear how it could have been 
constitutionally authorized.  The Constitution cannot be amended, expanded, 
or contracted by court rule.  What we said in O=Connor is that Rule 
18b(1)(a) correctly sets out the meaning of “counsel” in article V, section 
11.[10]  Although 
O=Connor 
involved the disqualification of a trial judge, article V, section 11 expressly 
applies the same standard to appellate judges, providing for replacements when a 
member of an appellate court is “thus disqualified”.[11]

We 
offered no justification in O=Connor for our 
construction of “counsel” in article V, section 11, other than to observe that 
it was “consistent with our holding . . . that ‘[an] attorney=s knowledge is imputed by 
law to every other attorney in the firm’” for the purpose of determining whether 
an attorney is disqualified from representing a client.[12]  Although 
that was true (it was consistent), the comparison is not very instructive 
because the bases for disqualifying attorneys and judges are not the same.  
The principal reason for disqualifying an attorney from accepting representation 
in conflict with a former associate’s client is to preserve client 
confidences.[13]  The 
constitutional bases for judicial disqualification are not aimed at preventing 
judges from sharing the confidences of their former clients or their former 
firm=s clients with 
their new colleagues, although such disclosures would be improper.  Rather, 
the purpose of article V, section 11 is to preserve the appearance of judicial 
impartiality by prohibiting a judge from sitting in a case to which he or she 
has too close a relationship C financial, familial, or 
professional.[14]

With 
respect to professional relationships, the constitutional concern is that a 
judge may appear not to be impartial in a case in which he or an associate once 
participated.  To be sure, no judge in Justice Higley’s situation C that is, from a firm with 
500-plus lawyers,[15] two of whom, 
briefly and without any awareness on her part, represented clients in a case 
that would later be randomly assigned to her on a panel of a nine-member 
appellate court, more than a year after her former associates had withdrawn from 
representing the clients C could possibly be 
suspected of actual partiality due to that representation.  But the 
appearance would be stronger, even compelling, if the firm were much smaller or 
the representation much longer, or if the judge knew of the representation and, 
say, had discussed it with his or her former partner.  The constitutional 
rule does not permit disqualification to turn on such factors, however, for two 
reasons.  The consequences of judicial disqualification are too severe 
C any action by a 
constitutionally disqualified judge is void and may therefore be challenged at 
any time[16] C for a rule that depends on 
too many circumstances.  And the issue is appearance, not actuality, so the 
rule can apply categorically without regard to circumstances tending to show, or 
not show, impartiality in fact.

The 
court of appeals worried that this construction of article V, section 11 would 
“enable litigants to ‘lie behind the log’ and ‘sample’ the justices of this 
Court before moving to disqualify, and then to void the judgment and opinion of 
the Court by collateral attack on otherwise final judgments on merely procedural 
grounds.”[17]  Of 
course, a litigant can always use constitutional disqualification this way, but 
the court=s concern 
appears to have been the increased risk when a judge’s only connection 
with a party was through the judge’s former associate and thus less likely to be 
recognized and raised earlier.  The concern is real, of course, although 
not in this case.  Nothing indicates that petitioner Tesco American, Inc. 
waited until after the panel opinion issued before raising the disqualification 
issue, and nothing suggests that Justice Higley previously had any inkling of 
her former firm=s 
representation of the Strongs.  Her former associates were not identified 
as counsel in any of the briefs, and the four documents in the court of appeals’ 
file on which their names appeared C a notice of cross-appeal, 
a status report, a joint motion to extend time, and a motion to withdraw C were not likely to have 
been noticed by the Justices in deciding whether to sit on the case.  But 
even if the actors’ hands had not been so clean, the risk of opportunism in 
raising disqualification operates not to shrink the constitutional grounds but 
to encourage diligence in determining that no basis for disqualification 
exists.
So 
I agree that Justice Higley was disqualified from sitting in this case.  I 
also agree that her disqualification provides no basis for also disqualifying 
the other two members of the panel or the other eight members of the court, but 
for reasons different from those offered by the Court.  The Court=s analysis runs thus:
 
$          
as we have held,[18] for purposes 
of lawyer disqualification, a lawyer’s associates must be irrebuttably presumed 
to have knowledge of the lawyer’s clients’ confidences because of (i) the 
difficulty in proving what an associate actually knew, and (ii) the importance 
of protecting client relations and the legal profession from possible 
misconduct;
 
$          
for the same reasons, the same presumption is necessary for purposes of judicial 
disqualification because “lawyers who become appellate judges” C like lawyers who leave 
firms for other reasons C “might take confidential 
information with them for future use”;[19]
 
$          
we have also held,[20] again for the 
same reasons, that for purposes of lawyer disqualification an associate’s 
imputed knowledge is further imputed to the lawyers with whom he or she later 
associates;
 
$          
but we cannot likewise presume, for purposes of judicial disqualification, that 
a judge may share the confidences of a former associate=s client with his or her 
colleagues because (i) a judge is not an advocate for an adversary, and (ii) to 
do so “would be presuming a serious ethical breach.”[21]
 

It 
is, of course, just as unethical for a lawyer to reveal client confidences as it 
is for a judge,[22] and it is not 
at all clear to me why we must presume, irrebuttably, that a lawyer acts 
unethically, while refusing even to consider that a judge may.
As 
I have explained above, I do not think the analogy to lawyer disqualification 
works well.  The reasons for the double imputation in the context of lawyer 
disqualification C the 
difficulty of proving actual knowledge, and the risk of harm to client relations 
and the legal profession C lack the same force in 
determining judicial disqualification, which is concerned with preventing an 
appearance of partiality.  It is simply carrying appearances too far to say 
that a judge=s 
mere association on the same appellate court or panel with another judge 
who happens to be disqualified casts any reasonable doubt on his or her own 
impartiality.  To impute disqualification in such a situation not only 
would do nothing to serve the constitutional purpose of avoiding the appearance 
of partiality, it would impede the operation of appellate courts by forcing the 
transfer of a case whenever a single Justice is disqualified.  Thus, I 
agree that the other two members of the panel in this case, Chief Justice Radack 
and Justice Alcala, were not disqualified from sitting, nor was any other member 
of the court.

I 
also agree with the Court that the court of appeals’ judgment was not void by 
reason of Justice Higley’s disqualifica­tion because the concurrence of the 
other panel members was enough to decide the case.[23]  But I 
disagree that the judgment must be reversed and the case remanded for 
reconsideration.  The Court’s justification for this result is contained in 
but two sentences:
 
But the judgment must be reversed because the opinion on which 
it was based was authored by a justice who was constitutionally disqualified; it 
would be stretching the Constitution too far to simply assume [Justice Higley] 
was not involved.  In accordance with the appellate rules, the two 
remaining justices may decide this case, but they must do so without the 
participation of a disqualified justice.[24]
 

Why?  
Certainly not because the participation of a disqualified justice affected the 
result when we have every indication it did not.  Chief Justice Radack and 
Justice Alcala knew of the factual basis for Justice Higley’s disqualification, 
as did every other member of the court, since the matter was considered en 
banc.[25]  And 
being fully aware of the facts, they declined to recuse[26] and voted to 
deny rehearing.[27]  True, 
they were mistaken on the legal issue of disqualification as it turns out, but 
the Court cannot explain why they might have ruled differently on the merits had 
they known Justice Higley was disqualified, or why they might do so on remand, 
now that the mistake has been set right.  No one suggests that Justice 
Higley was aware of any basis for disqualification before she issued her 
opinion, so it is impossible to think that facts revealed for the first time 
afterward could have influenced her.
The 
only possible reason for remanding this case is for appearance’ sake.  The 
rule will be that any time a disqualified appellate judge participates in a 
decision, right or wrong, it must be reversed, period, even if it is to be 
reconsidered by the same court and two of the same judges, who may reissue the 
same opinion.  If this approach bears any real benefit, and I cannot see 
that it does, the detriments are greater.  A remand suggests that Justices 
on the courts of appeals do not endorse the opinions and judgments they join but 
simply go along with the author.  Yet the Court itself acknowledges that 
“judgments and opinions are generally rendered by a multi-member court, not a 
single judge”.[28]  The 
reality is that appellate court opinions are usually the work of many 
hands.  Colleagues offer or insist on changes in text and approach.  
The result is importantly a collegial product, even when signed by one 
Justice.  The message of today=s remand disserves this 
process.

Furthermore, 
a remand sends the parties on what is almost certain to be a fool’s errand, 
wasting their time and resources and, though to a much lesser extent, those of 
the court of appeals.  Having presented their case for decision twice now, 
the parties are returned to the court of appeals to reconfirm that the same 
Justices who decided their case and denied rehearing have still not changed 
their minds.  Only one thing has changed: the court of appeals was mistaken 
about one of the constitutional grounds for disqualification, a matter unrelated 
to any other issue in the case.  Of course, the court is free to reassign 
the case to an entirely new panel, have it reargued, maybe even rebriefed, and 
write an entirely new opinion, but since none of these things is required or 
useful, none is likely to happen.  Instead, the Justices who joined Justice 
Higley’s opinion will almost certainly reaffirm their decision, and then the 
parties can refile their petition for review and response.  The Court will 
consider them again, and if it requests briefing as it did before, the parties 
will file the same briefs, omitting the discussion of disqualification.  
The parties will get twice as many appeals on the exact same issues, but the 
same number of decisions.  All this to preserve appearances.
Finally, 
regarding the procedure to be used by an appellate court to determine whether 
one of its members is disqualified, the court of appeals divided over whether it 
could itself consider issues of disqualification raised on motion, as the 
majority held,[29] or whether 
those issues should properly be left to this Court on petition for mandamus, as 
the dissent urged.[30]  The 
Court does not address this issue but tacitly sides with the majority.  I, 
too, agree with the majority that an appellate court should follow the same 
procedure in determining disqualification as in determining recusal.[31]
Justice 
Higley’s participation in the decision of the court of appeals was error, though 
no fault of her own, but not error that requires reversal.  We have an 
opinion joined by two other Justices, fully explaining the reasons for their 
decision, and we should proceed to determine the issues the parties have raised 
here.  I respectfully dissent.

                                                                                    

Nathan L. Hecht
Justice
Opinion 
delivered: March 17, 2006




[1] 129 S.W.3d 606 (Tex. App.CHouston [1st Dist.] 2004).

[2] 129 S.W.3d 594 (Tex. App.CHouston [1st Dist.] 2003) (en banc order on motion to 
disqualify).

[3] Id. at 596.

[4] Tex. 
Const. art. V, ' 11 (“No judge shall sit in any case wherein the judge 
may be interested, or where either of the parties may be connected with the 
judge, either by affinity or consanguinity, within such a degree as may be 
prescribed by law, or when the judge shall have been counsel in the 
case.”).

[5] 92 S.W.3d 446, 449 (Tex. 2002) (per 
curiam).

[6] Tex. R. Civ. 
P. 18b(1)(a) (“Judges shall disqualify themselves in all proceedings in 
which: (a) they have served as a lawyer in the matter in controversy, or a 
lawyer with whom they previously practiced law served during such association as 
a lawyer concerning the matter . . . .”).

[7] 129 S.W.3d at 600 (“O=Connor 
specifically distinguishes the constitution­al standard for disqualification 
from the standard for disqualification under Rule of Civil Procedure 18b.  
Quoting the language from article V, section 11 of the constitution that 
>[n]o judge shall sit in any case . . . when 
the judge shall have been counsel in the case,= O=Connor states, 
>Before a judge is disqualified on this ground, “it is 
necessary that the judge acted as counsel for some of the parties in 
[the] suit before him in some proceeding in which the issues were the same as in 
the case before him.”=  The constitutional standard thus requires that 
the judge himself must have acted as counsel for a party to the 
litigation on the same matter.  O=Connor 
continues, >Rule 18b(1)(a) 
incorporates this [constitutional] language and also provides that a judge is 
disqualified if “a lawyer with whom [the judge] previously served during such 
association as a lawyer concerning the matter.”  Rule 18b(1)(a) accordingly 
recognizes that a judge is vicariously disqualified under the 
constitution as having “been counsel in the case” if a lawyer with whom the 
judge previously practiced law served as counsel to a party concerning the 
matter during their association.=  O=Connor thus 
expressly distinguishes the constitutional standard for disqualification of a 
judge who personally served as counsel in a case from the procedural standard 
set out in Rule 18b(1)(a), promulgated under the constitution, which includes 
not only direct personal disqualification but also vicarious disqualification.”) 
(brackets and emphasis in original, indented quote replaced with quotation 
marks, citations omitted).

[8] 92 S.W.3d at 448-49 (emphasis added, citations 
omitted).

[9] 129 S.W.3d at 600 n.8 (“That Rule 18a is promulgated 
>under the constitution= does not entail that it is co‑extensive with article V, 
section 11.  All valid rules ultimately derive their authority from 
constitutional provisions.”) (citation omitted).

[10] 92 S.W.3d at 449.

[11] Tex. 
Const. art. V, ' 11 (“When the Supreme Court, the Court of Criminal 
Appeals, the Court of Appeals, or any member of any of those courts shall be 
thus disqualified to hear and determine any case or cases in said court, the 
same shall be certified to the Governor of the State, who shall immediately 
commission the requisite number of persons learned in the law for the trial and 
determination of such cause or causes.  When a judge of the District Court 
is disqualified by any of the causes above stated, the parties may, by consent, 
appoint a proper person to try said case;  or upon their failing to do so, 
a competent person may be appointed to try the same in the county where it is 
pending, in such manner as may be prescribed by law.”).

[12] 92 S.W.3d at 449 (citing National Med. Enters., Inc. 
v. Godbey, 924 S.W.2d 123, 131 (Tex. 1996)).

[13] National Med. Enters., 924 S.W.2d at 131 
(observing that the authorities supporting disqualification were based “on the 
attorney=s duty to the party to preserve its 
confidences”).

[14] Newcome v. Light, 58 Tex. 141, 145 (1882) 
(“Disqualification by reason of having been of counsel, relied on in this case, 
seems to be of recent origin and created by express constitutional or statutory 
provision. As it may exist independently of relationship or pecuniary interest 
in the result, it was doubtless based upon considerations of supposed bias, 
partiality or prejudice, arising from the relationship of client and attorney, 
which may reasonably be presumed might influence the action of the judge.”); 
Slaven v. Wheeler, 58 Tex. 23, 25 (1882) (“The object of that provision 
was to secure to litigants an impartial judge, one who had not previously formed 
an opinion or reached a conclusion in regard to the subject matter of that 
particular case; and additional force should be given to that construction when 
the advice given and conclusion formed is between the identical parties who are 
afterwards litigants.”).  See also Taylor v Williams, 26 Tex. 583, 
585‑586  (1863)  (noting that, under the common law, a judge was not 
disqualified from sitting in a cause in which he had been of counsel);  
Chambers v Hodges, 23 Tex. 104, 111‑112 (1859) (concluding that a 
judgment rendered in 1842, and final in 1848, was not subject to Tex. Const. of 1845, art. IV, 
' 14, and would not, in the absence of any other law, be 
void on the ground that the district judge had acted as an attorney in the 
case).

[15] See Lexis Nexis Sixth Annual Survey 
C 1,000 Largest Law Firms, Corp. Legal Times 73 (June 2001) (reporting that Baker Botts= main office was in Houston and that the firm had 581 
lawyers in the United States and abroad).

[16] Buckholts Indep. Sch. Dist. v. Glaser, 632 
S.W.2d 146, 148 (Tex. 1982) (citing Fry v. Tucker, 202 S.W.2d 218, 221 
(Tex. 1947), Templeton v. Giddings, 12 S.W. 851 (Tex. 1889), 
Stephenson v. Kirkham, 297 S.W. 265, 267 (Tex. Civ. App.CCSan Antonio 1927, writ ref=d), and Nalle v. City of Austin, 22 S.W. 960 
(1893)).

[17] 129 S.W.3d 594, 601 (Tex. App.CHouston [1st Dist.] 2003).

[18] In re O=Connor, 92 
S.W.3d 446, 449 (Tex. 2002) (per curiam); National Med. Enters., Inc. v. 
Godbey, 924 S.W.2d 123, 131 (Tex. 1996).

[19] Ante at ___.

[20] National Med. Enters., 924 S.W.2d at 
131-132.

[21] Ante at ___.

[22] Tex. 
Disciplinary R. Prof=l Conduct 1.05, reprinted in Tex. Gov=t Code, tit. 2, subtit. G app. A (Tex. State Bar art. X, ' 9).

[23] See Tex. 
Const. art. V, ' 6 (“The Court of Appeals may sit in sections as 
authorized by law.  The concurrence of a majority of the judges sitting in 
a section is necessary to decide a case.”); Tex. Gov=t Code ' 22.222(a), (c) (“(a) Each court of appeals may sit 
in panels of not fewer than three justices for the purpose of hearing cases. 
. . .  (c) A majority of a panel constitutes a quorum for the 
transaction of business, and the concurrence of a majority of a panel is 
necessary for a decision.”); Tex. R. 
App. P. 41.1(b) (“After argument, if for any reason a member of the panel 
cannot participate in deciding a case, the case may be decided by the two 
remaining justices.”).

[24] Ante at ___ (citations 
omitted).

[25] 129 S.W.3d 594.

[26] Id. at 596.

[27] 129 S.W.3d 606.

[28] Ante at __.

[29] 129 S.W.3d at 597 (citing McCullough v. Kitzman, 
50 S.W.3d 87, 88 (Tex. App.CWaco 2001, pet. denied); Sears v. Olivarez, 28 
S.W.3d 611, 615 (Tex. App.CCorpus Christi 2000, no pet.).

[30] Id. at 604-605 (Jennings, J., 
dissenting).

[31] See Tex. 
R. App. P. 16.3(b).