ACCEPTED
01-15-00586-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
11/16/2015 6:09:48 PM
CHRISTOPHER PRINE
CLERK

No. 01-15-00586-CV

IN THE COURT OF APPEALS FOR
THE FIRST DISTRICT OF TEXAS
SITTING AT HOUSTON

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
11/16/2015 6:09:48 PM
CHRISTOPHER A. PRINE
Clerk

DON PETERSON, MACKEY PETERSON, TONYA PETERSON, AND
LONNY PETERSON,

     Appellants,

v

CAROL ANN MANLEY AND DAVID PETERSON,

     Appellees.

On Appeal from
Probate Court No. One, Harris County, Texas
Honorable Lloyd Wright, presiding
Trial Court Cause No. 427,208

APPELLANTS' BRIEF

Respectfully submitted,

ORAL ARGUMENT REQUESTED

Philip M. Ross
State Bar No. 017304200
1006 Holbrook Road
San Antonio, Texas 78218
Phone: 210/326-2100
Email: ross_law@hotmail.com

By: /s/ Philip M. Ross
Philip M. Ross
Attorney for Appellants

## IDENTITY OF PARTIES AND COUNSEL

Party:                                    Counsel:

Don Peterson                              Philip M. Ross
Mackey Peterson                           State Bar No. 17304200
Tonya Peterson                            1006 Holbrook Road
Lonnie Peterson                           San Antonio, Texas 78218
                                          Phone: 210/326-2100
Appellants                                Email: ross_law@hotmail.com


Carol Ann Manley                          Sarah Pacheco
David Peterson                            State Bar No. 00788164
                                          Kathleen Beduze
                                          State Bar No. 24052205
                                          Crain, Caton & James, PC
                                          1401 McKinney St., Suite 1700
Appellees                                 Houston, Texas 77010
                                          Phone: 713-658-2323
                                          Email: spacheco@craincaton.com


Jill Young, Guardian ad litem
State Bar No. 00797670
MacIntyre, McCulloch, Stanfield,
Young, LLP
2900 Weslayan, Suite 150
Houston, TX 77027
Phone: 713-572-2900
Email: jill.young@mmlawtexas.com

Russ Jones, Attorney ad litem
State Bar No. 10968050
Underwood, Jones, Scherrer &
Malouf, PLLC
5177 Richmond Ave., Suite 505
Houston, TX 77056
Phone: 713-552-1144
Email: rjones@ujsmlaw.com

TABLE OF CONTENTS

Page

IDENTITY OF PARTIES AND COUNSEL ..…………………….…… ii

TABLE OF CONTENTS …………………………………………… iii

INDEX OF AUTHORITIES ……………………………………….. iv

STATEMENT OF THE CASE ………………….………… ………. 2

STATEMENT OF JURISDICTION …………………………….. 2

STATEMENT REGARDING THE RECORD…..…………………… 3

ISSUES PRESENTED …………………………………………….. 3

ISSUE NO. 1: Whether the trial court lacked jurisdiction to approve the mediated settlement agreement of the parties pursuant to the Final Judgment May 12, 2015, when the terms of the agreement were moot, because the proposed ward had died.

ISSUE NO. 2: Whether the probate court lost jurisdiction of the guardianship matter, when the proposed ward died, except for the filing of the final accounting and dismissing the guardianship proceeding.

ISSUE NO. 3: Whether the trial court's Orders granting the Defendants, attorney ad litem and guardian ad litem's Motions for Sanctions were signed in error on November 10, 2014 because the Orders were vague, and overbroad, unsubstantiated and/or unlawful.

STATEMENT OF FACTS AND
PROCEDURAL BACKGROUND …...................................................... 3

STANDARD OF REVIEW …......…………………………………….   12

SUMMARY OF ARGUMENT …………………………………….   13

ARGUMENT AND AUTHORITIES …………………………………..   13

ISSUE NO. 1:  Whether the trial court lacked jurisdiction to approve the mediated settlement agreement of the parties pursuant to the Final Judgment May 12, 2015, when the terms of the agreement were moot, because the proposed ward had died.
…...................................................................................   13

ISSUE NO. 2:   Whether the probate court lost jurisdiction of the guardianship matter, when the proposed ward died, except for the filing of the final accounting and dismissing the guardianship proceeding.
…...................................................................................   14

ISSUE NO. 3:   Whether the trial court's Orders granting the Defendants, attorney ad litem and guardian ad litem's motions for sanctions were signed in error on November 10, 2014 because the Orders were vague and overbroad, unsubstantiated and/or unlawful.
…...................................................................................   16

A      Order on Motion for Sanctions filed by W. Russ Jones, attorney ad litem, and Jill Young, guardian ad litem, signed November 10, 2014.
…...................................................................................   16

B      Order on David Peterson and Carol Anne Manley's Motion for Sanctions, signed November 10, 2014.
…...................................................................................   19

CONCLUSION and PRAYER…………………………………....   32

CERTIFICATION …………………………………......………...   34

iv

CERTIFICATE OF COMPLIANCE …..................................... 34

CERTIFICATE OF SERVICE ……………….……….……...….. 34

INDEX OF AUTHORITIES

CASES                                                    PAGE(S)

*Alejandro v. Bell*
84 S.W.3d 383 (Tex. App.— Corpus Christi 2002) …...…........... 18

*Armstrong v. Collin County Bail Bond Bd.*
233 S.W.3d 57 (Tex. App.—Dallas 2007, no pet) …..................... 17

*Buckholts Indep. Sch. Dist. V. Glaser*
632 S.W.2d 146 (Tex. 1982) …...................................... 24

*Carroll v. Carroll*
893 S.W.2d 62 (Tex. App.—Corpus Christi 1994, no writ) …........ 15

*Easterline v. Bean*
49 S.W.2d 427 (1932) …........................................... 14, 15

*Edwards v. Pena*
38 S.W.3d 191 (Tex. App.—Corpus Christi 2001, no pet.) …........ 15

*Eichelberger  v. Eichelberger*
582 S.W.2d 395 (Tex.1979) …...................................... 29

*Fry v. Tucker*
202 S.W.2d 218 (1947) ….......................................... 23

*Gentile v. State Bar of Nev*.
501 U.S. 1030 (1991) …........................................... 29

v

CASES                                                                    PAGE(S)

*GTE Commc'ns Sys. Corp. v. Tanner*
856 S.W.2d 725, 731 (Tex. 1993) …............................................. 17

*In the Guardianship of L.A. Moon*
216 S.W.3d 506, 510 (Tex.App.—Texarkana 2007) …................. 15

*In re Estate of Glass*
961 S.W.2d 461462 (Tex. App.—Houston [1st Dist.]
1997, writ denied) …..................................................................... 15

*In re Guardianship of Whitt*
407 S.W.3d 495 (Tex.App.-Houston [14 Dist.] 2013) …............. 16

*In re Sawyer*
360 U.S. 622 (1959) …................................................................. 29

*In re Union Pacific Resources Co.*
969 S.W.2d 427 (Tex. 1998) …................................................... 24

*Johnson v. City of Fort Worth*
774 S.W.2d 653 (Tex.1989) …..................................................... 12

*Kutch vs. Del Mar College*
831 S.W.2d 506 (Tex. App.—Corpus Christi, 1992, no pet) …...... 28

*Lehmann v. Har-Con Corp.*
39 S.W.3d 191 (Tex. 2001) …..................................................... 2

*Mattly v. Spiegel, Inc.*
19 S.W.3d 890 (Tex. App.—Houston, 14th Dist] 2000, no pet) .. 17, 18

*McWhorter v. Sheller*
993 S.W.2d 781
(Tex. App.—Houston -14[th] Dist 1999, pet denied) …................. 28

*Mills v. Alabama*
384 U.S. 214 (1966) …................................................................ 30

CASES                                                      PAGE(S)

*Monroe v. Blackmon*
946 S.W.2d 533 (Tex. App. -- Corpus Christi 1997,
orig. proceeding) …...................................................................  34

*NAACP v. Button*
371 U.S. 415, (1963) …................................................................  30

*Nat'l Liab. & Fire Ins. Co. v. Allen*
15 S.W.3d 525 (Tex.2000) …........................................................  12

*New York Times Co. v. Sullivan*
376 U.S. 254 (1964) …..................................................................  30

*Palais Royal, Inc. v. Partida*
916 S.W.2d 650 (Tex. App.--Corpus Christi 1996,
[leave denied]) …........................................................................  25

*Parker v. Walton*
233 S.W.3d 535 (Tex. App.— Houston [14th Dist.]
2007, no pet.) …..........................................................................  18

*Polk v. State Bar of Texas*
374 F. Supp. 784 (N.D. Tex. 1974)  …..................  29, 30

*Postal Mut. Indemnity Co. V. Ellis*
S.W.2d 482 (1943) …....................................................................  24

*Save Our Springs Alliance, Inc. v.*
*Lazy Nine Mun. Util. Dist. ex rel. Bd. of Directors*
198 S.W.3d 300 (Tex. App.— Texarkana 2006, pet. Denied)  ….  17

*St. Luke's Episcopal Hosp. v. Agbor*
952 S.W.2d 503 (Tex.1997) …......................................................  13

*Texas-Ohio Gas,Inc.v. Mecom*
28 S.W.3d 129 (Tex. App—Texarkana 2000, no pet)  …...............  18

CASES                                                        PAGE(S)

*Transamerican National Gas v. Powell*
811 S.W.2d 913 (Tex. 1991) …..................................... 28, 31, 32

STATE STATUTES AND RULES                      PAGE(S)

Tex. Civ. Prac. & Rem. Code Ann. § 51.014 ..................................... 3

Tex. Civ. Prac. & Rem. Code Ann. § 10.001 ................................. 17, 19

Texas Constitution, Article 5, Section 11 …................................... 23, 24

TEXAS CONST. ART. 8, 13 …................................... 29, 30, 31

Texas Disciplinary Rules of
Professional Conduct, Rule 3.07 …........................... 19, 20, 25, 26, 27, 32

Texas Judicial Canon 3B(1) …..................................... 23

Tex. Prob. Code Ann. §745(a)(2) (Vernon Supp. 2006) …................... 14

TEX. R. APP. P. 25.1(a) ................................................. 2

TRE Rules 802, 803, 804, 901 …..................................... 27

United States Constitution, Amendment 1 ......................................... 31

TRCP Rule 778 …........................................................... 21

No. 01-15-00586-CV

IN THE COURT OF APPEALS FOR
THE FIRST DISTRICT OF TEXAS
SITTING AT HOUSTON

DON PETERSON, MACKEY PETERSON, TONYA PETERSON, AND LONNY
PETERSON,
      Appellants,

v

CAROL ANN MANLEY AND DAVID PETERSON,
      Appellees.

On Appeal from
Probate Court No. One, Harris County, Texas
Honorable Lloyd Wright, presiding
Trial Court Cause No. 427,208

APPELLANTS' BRIEF

TO THE HONORABLE JUSTICES OF THE FOURTH COURT OF APPEALS:

NOW COME, Don Peterson, Mackey Peterson, Tonya Peterson, and Lonny
Peterson, by and through the undersigned attorney at law, and file this appeal from
the Final Judgment and Orders of the trial court, and would show the Court as
follows:

1

## STATEMENT OF CASE

This guardianship proceeding regarding Ruby S. Peterson, the proposed ward ("Mrs. Peterson") began, when her adult children Carol Ann Manley and David Peterson, who had opposed the guardianship application filed by Mrs. Peterson's adult sons Don, Mackey and Lonny Peterson, filed a guardianship application after the first application was voluntarily nonsuited. The guardianship proceeding was settled, without any temporary or permanent guardianship ever being ordered, pursuant to a voluntary, non-revocable mediated settlement agreement on October 29, 2014.

The trial court did not approve the settlement agreement before Mrs. Peterson died on January 11, 2015. The trial court lost its jurisdiction over the person of Mrs. Peterson due to her death, and the settlement agreement became moot before it was approved by a Final Judgment on May 12, 2015.

## STATEMENT OF JURISDICTION

Appellants invoke the jurisdiction of this Court by filing their notice of this appeal pursuant to TEX. R. APP. P. 25.1(a). Appellants submit that they have complied with all conditions precedent to invoking the jurisdiction of the First Court of Appeals. As a general rule, a party may appeal only from a final judgment. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). This

Court has jurisdiction over appeals from final decisions of trial courts and from interlocutory orders as provided by statute. *Id*.; see Tex. Civ. Prac. & Rem. Code Ann. § 51.014 (Vernon Supp. 2006).

## STATEMENT REGARDING THE RECORD

The Clerk's Record consisting of four volumes has been filed. The Reporter's Record consisting of thirteen volumes has been filed.

## ISSUES PRESENTED

ISSUE NO. 1:  Whether the trial court lacked jurisdiction to approve the mediated settlement agreement of the parties pursuant to the Final Judgment May 12, 2015, when the terms of the agreement were moot, because the proposed ward had died.

ISSUE NO. 2:   Whether the probate court lost jurisdiction of the guardianship matter, when the proposed ward died, except for the filing of the final accounting and dismissing the guardianship proceeding.

ISSUE NO. 3:  Whether the trial court's Orders granting the Defendants, attorney ad litem, and guardian ad litem's motions for sanctions were signed in error on November 10, 2014 because the Orders were vague, overbroad, unsubstantiated and/or unlawful.

## STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

At the time of filing of this guardianship proceeding, Mrs. Peterson was the

92-year old mother of Mack, Don, Lonny, David and Carol. Mrs. Peterson was a resident at Silverado Senior Living – Sugar Land ("Silverado") at all times relevant to this case.

In 1993, Mrs. Peterson and her husband, both now deceased, executed a durable power of attorney appointing Carol and David as their agents.

David and Carol moved Mrs. Peterson to Silverado, which is a locked memory care facility, on or about August 27, 2013.

Shortly after Carol and David moved Mrs. Peterson to Silverado they obtained a letter from Dr. Chris Merkl, M.D. stating that she had severe dementia. (RR Vol. 5 page 221, lines 2-25; page 222, lines 1-24; RR Vol. 9, page 111, lines 1-25; page 112, lines 1-14). Dr. Merkl's diagnosis of severe dementia was contradicted by his own subsequent testimony and the testimony of Dr. John Tennison, M.D. (RR Vol. 6 page 221, lines 19-25, page 222, lines 1-22; Vol. 8, page 59, lines 6-25, page 60, lines 1-2). Carol and David used Dr. Merkl's diagnosis as authority for their actions as Mrs. Peterson's agents for making her medical decisions. Thereafter, Carol and David refused to allow Mrs. Peterson to leave Silverado.

Appellants alleged and offered evidence that Mrs. Peterson complained about the conditions of her residency at Silverado. When Mrs. Peterson refused to

take her medication voluntarily, Silverado staff mixed her drugs in a drink and told her it was a vitamin drink. (RR Vol. 5, page 109, lines 16-25; page 110, lines 1-18). Carol Manley testified that she agreed with Dr. Merkl's opinion that it was okay to give Mrs. Peterson drugs against her will by deceiving her. (RR Vol. 8, page 365, lines 17-20). David Peterson testified that one of the reasons he agreed to keep Mrs. Peterson at Silverado was because they were able to do whatever it took to medicate Mrs. Peterson, when she refused. (RR Vol. 9, page 113, lines 2-23). David Peterson also agreed with Dr. Merkl that it was often appropriate for Silverado to trick Mrs. Peterson into taking medications involuntarily. (RR Vol. 8, page 365, lines 1-20). Silverado had a custom or practice of lying or tricking a patient into taking medication if recommended by a doctor. (RR Vol. 9, page 2127, lines 1-20).

Mrs. Peterson asked to leave Silverado to go out to eat with Don and his wife. She asked to go to the church of her choice in Baytown. She asked to go visit Mack and his wife at their home in Wimberly, Texas. After Carol and David repeatedly denied her requests to go to the church of her choice, go out to eat and go to visit Mack at his home, Mrs. Peterson revoked the 1993 power of attorney on November 15, 2013, and she executed a new durable power of attorney appointing her sons Mack and Don as her agents. (CR1 pages 67 and 68-

Appellants alleged and offered evidence that Silverado unreasonably and unlawfully restrained Mrs. Peterson from leaving its facility; neglected her medical care and treatment; unreasonably and unlawfully restricted her communication and association with her family; denied her right to refuse to take medications that made her feel sick; over-sedated her at times to control her behavior in reaction to denial of her requests to leave or move away; failed or refused to provide adequate medical treatment to maintain and improve her health; and/or retaliated against her and her family for asserting Mrs. Peterson's rights to leave Silverado and move to a nursing home near her church and friends in Baytown, live in the community with her son Mack, go to church, go to lunch, visit her family in their homes, and/or receive adequate medical care and treatment in order to maintain or improve her health.

Silverado relied on the 1993 power of attorney appointing Carol and David as Mrs. Peterson's agents to manage her finances and make medical decisions for her if she became incapacitated. However, Appellants alleged and offered evidence that on or about November 15, 2013 Mrs. Peterson did not lack capacity and was presumed to have capacity to (1) decide where she did or did not want to live, (2) refuse to take medications that made her sick, (3) go to the church of her choice, (4) visit with her sons and their wives, (4) revoke her power of attorney

and (5) execute new powers of attorney.

When Don and Mack visited Mrs. Peterson at Silverado in mid-November 2013, she asked them what they were doing to get her out of Silverado. They told her that they hired an attorney. She said, "Hire two. I'll pay for it." (RR Vol. 5, page 105, lines 12-25; page 106, lines 1-7; page 121, line 25; page 122, lines 1-9). Mrs. Peterson also instructed Don and Mack to bring her a new power of attorney to sign because she wanted to revoke her prior power of attorney and appoint Don and Mack as her agents.

On November 10, 2013, Don and his wife Carol visited Mrs. Peterson, who stated verbally and in writing that she wanted to leave Silverado and wanted her son to get her an attorney to get her out. (RR Vol. 5, page 47, lines 1-12).

On November 15, 2013, Don and Mack brought Mrs. Peterson a new power of attorney revoking her prior power of attorney and appointing them as her agents, which she executed before a Notary Public for the State of Texas and a witness. (RR Vol. 5, page 124, lines 3-13).

Appellants alleged and offered evidence that Mrs. Peterson had legal capacity to revoke her prior power of attorney and execute a new power of attorney, which she voluntarily executed on or about November 15, 2013. (RR Vol. 5, page 125, lines 18-24; page 223, lines 17-23). Appellants further alleged

and offered evidence that Mrs. Peterson had not been judicially determined to lack capacity, and she was presumed to have had capacity in November 2013.

As soon as Silverado's staff noticed that Mrs. Peterson was signing a legal document before a Notary Public, they abruptly terminated her visit with Don and Mack, told them they had to leave and escorted them out of the facility on November 15, 2013. Later that day, Don recorded the executed powers of attorney and returned to Silverado to move Mrs. Peterson out of Silverado.

Appellants alleged and offered evidence that Silverado wrongfully refused to accept Mrs. Peterson's new power of attorney and allow her to leave with Don. Instead, Silverado personnel called the City of Sugar Land police and threatened to have Don and Mack arrested for trespass if they did not leave or ever returned. (RR Vol. 5, page 124, lines 3-23; page 217, lines 23-25; page 218, lines 1-4). In response to their request of when they could see their mother again, a Sugar Land police officer told them "when she's dead." (RR Vol. 5, page 127, lines 15-18; page 221, lines 2-5). Then, without a court order, Silverado banned Don and his wife, Mack and his wife, and Lonny from visiting Mrs. Peterson under any circumstances. (RR Vol. 5, page 221, lines 10-25; page 222, lines 1-24; Vol. 9, page 72, lines 3-20). On December 9, 2013, Don's wife Carol was visiting Mrs. Peterson in her room for about 30 minutes before Silverado asked her who she

was, and then, told her she had to leave. (RR Vol. 5, page 16, lines 16-25; page 17, lines 1-17).

Appellants alleged and offered evidence that Silverado falsely imprisoned Mrs. Peterson against her will in a conspiracy with Carol and David. (RR Vol. 5, page 105, lines 12-25; page 106, lines 1-7). To wit, Silverado has repeatedly refused Mrs. Peterson's requests to leave Silverado to go to lunch, go shopping, attend social events, celebrate holidays with her family, or any other purpose unless approved by Carol or David. (RR Vol. 5, page 21, lines 15-25; page 22, line 1; page 25, lines 3-25; page 26, lines 1-16). Evidence showed that it would have been in Mrs. Peterson's best interests for her to be allowed to choose where she lived and to have unrestricted access to all of her children and their spouses. (RR Vol. 5, page 36, lines 2-25; page 37, lines 1-25). Evidence also showed that it was in Mrs. Peterson's interest to be allowed to communicate and associate with her friends and her church. (RR Vol. 5, page 108, lines 1-25; page 109, lines 1-15). There was no reason why Mrs. Peterson could not live in her own apartment and spend her time with friends and family. (RR Vol. 5, page 94, lines 11-25; page 95, lines 1-17; page 98, lines 9-25; page 99, lines 1-13; page 102, lines 6-25; page 103, lines 1-10; page 119, lines 7-25; page 120, lines 1-22). Alternatively, Mrs.

Peterson could have moved to another facility close to her church if she were allowed to leave Silverado. (RR Vol. 5, page 215, lines 10-25; page 216, lines 1-15).

From November 15, 2013 through December 18, 2013, Appellants were denied all contact with their mother until Mack and Don hired a lawyer to sue for guardianship in Probate Court No. 1, Harris County, Texas.

Appellants alleged and offered evidence that Silverado wrongfully refused to acknowledge the 2013 revocation of the 1993 durable power of attorney. Silverado also wrongfully refused to acknowledge the new Durable Power of Attorney that was executed by Mrs. Peterson on November 15, 2013. Don Peterson testified regarding the facts and circumstances of Ruby signing the revocation of her 1993 durable and medical power of attorney. (RR Vol. 8, pages 227, lines 23-25; pages 228-231). The revocation, which was marked as Plaintiffs' Exhibit 4, was offered and admitted. (RR Vol. 8, page 232, lines 4-11).

On August 10, 2014, Dr. John Tennison, M.D. submitted a medical examiner's report stating that, to a reasonable degree of medical certainty, Mrs. Peterson had contract-making capacity in November 2013. (CR4 page 3494).

This evidence supports the fact that Mrs. Peterson had the capacity to execute a new power of attorney in November 2013 and revoke her prior power of attorney.

On or about July 25, 2014, Silverado banned Mrs. Peterson's sons Don and Mack and their wives, and Lonny from visiting her because of its objection to publicity regarding Mrs. Peterson. (RR Vol. 5, page 77, lines 11-25; page 78, lines 1-16; page 192, lines 23-25; page 193, lines 1-4; page 219, lines 13-25; page 220, lines 1-13; Vol. 9, page 73, lines 9-15; page 221; lines 10-21). Silverado's ban on visitation arbitrarily and unreasonably denied Mrs. Peterson and her family their rights to communicate and associate with each other. (RR Vol. 5, page 120, lines 23-25; page 121, lines 1-6).

On October 29, 2014, the parties entered into a binding, non-revocable Rule 11 mediated settlement agreement. (CR4 page 3542-3545). On November 3, 2014, the mediator reported to the trial court that the mediation was successful. (CR4 page 3432). On November 7, 2014, the trial court granted the request of the guardian ad litem and attorney ad litem for permission to execute the Rule 11 agreement. (CR4 page 3541). However, the trial court did not approve the mediated settlement agreement until it entered a final judgment, which was four months after Mrs. Peterson died. The mediated settlement agreement became moot

after Mrs. Peterson died on or about January 11, 2015. (RR Vol. 13, page 10, lines 13-25; page 11, lines 1-25; page 12, lines 1-16).

On January 16, 2015, Appellants filed a motion to dismiss the guardianship proceeding. (CR4 page 3814-3816). The motion to dismiss was denied on May 12, 2015. (CR4 page 3952). On April 3, 2015, the guardian ad litem and attorney ad litem filed a motion to enter judgment on the settlement agreement. (CR4 page 3871-3875).

On May 12, 2015, the trial court entered a Final Judgment approving the mediated settlement agreement and denying Appellants' motion to dismiss. (CR4 page 3949-3951). The trial court acknowledged that Mrs. Peterson passed away, without having either a temporary or permanent guardian appointed, and there was no guardianship proceeding after she died. (RR Vol. 13, page 17, lines 2-12; page 22, lines 7-25; page 23, lines 1-25; and page 24, lines 1-13).

## STANDARD OF REVIEW

A Court of Appeals reviews the trial court's interpretation of applicable statutes de novo. See *Johnson v. City of Fort Worth*, 774 S.W.2d 653, 655-56 (Tex.1989). In construing a statute, the objective is to determine and give effect to the Legislature's intent. See *Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525,

527 (Tex.2000). If possible, 407 S.W.3d 499 the reviewing court must ascertain that intent from the language the Legislature used in the statute and not look to extraneous matters for an intent the statute does not state. *Id*. If the meaning of the statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the provision's words. *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex.1997). A reviewing court must not engage in forced or strained construction; instead, it must yield to the plain sense of the words the Legislature chose. See *id*.

## SUMMARY OF ARGUMENT

The trial court lacked jurisdiction to approve the mediated settlement agreement of the parties pursuant to the Final Judgment May 12, 2015, when the terms of the agreement were moot, because the proposed ward had died. When the proposed ward died, the probate court lost jurisdiction of the guardianship matter, except for the filing of the final accounting and dismissing the guardianship proceeding. The trial court's Order granting the attorney ad litem and guardian ad litem's Motion for Sanctions was signed in error on November 10, 2014 because the Order was vague and overbroad.

## ARGUMENT AND AUTHORITY

ISSUE NO. 1: Whether the trial court lacked jurisdiction to approve the mediated

settlement agreement of the parties pursuant to the Final Judgment May 12, 2015, when the terms of the agreement were moot, because the proposed ward had died.

ISSUE NO. 2:    Whether the probate court lost jurisdiction of the guardianship matter, when the proposed ward died, except for the filing of the final accounting and dismissing the guardianship proceeding.

Appellants submit that the trial court's jurisdiction over the guardianship proceeding ended, when Ruby died on or about January 11, 2015, except for the filing of the final accounting and dismissing the guardianship proceeding. Therefore, the trial court lacked jurisdiction to approve the parties' settlement agreement, which became moot, when Ruby died. Furthermore, there was no guardianship estate because the trial court did not appoint a guardian.

When a ward dies, the probate court loses jurisdiction of the guardianship matter, except for the filing of the final accounting and closing of the guardianship. *In the Guardianship of L.A. Moon,* 216 S.W.3d 506, 510 (Tex.App.—Texarkana 2007)  (citing Tex. Prob. Code Ann. §745(a)(2) (Vernon Supp. 2006) guardianship of incapacitated ward is settled and closed when ward dies); *Edwards v. Pena,* 38 S.W.3d 191, 195 (Tex. App.—Corpus Christi 2001, no pet.); *Carroll v. Carroll*, 893 S.W.2d 62, 68 (Tex. App.—Corpus Christi 1994, no writ).

In *Easterline v. Bean*, the Texas Supreme Court declared "it has long been

the public policy of this state that, when a ward dies, the probate court loses jurisdiction of the guardianship matter, save and except that the guardianship shall be immediately settled and closed, and the guardian discharged." *In the Guardianship of L.A. Moon,* 216 S.W.3d at 510 (citing *In re Estate of Glass*, 961 S.W.2d 461, 462 (Tex. App.—Houston [1st Dist.] 1997, writ denied) (quoting *Easterline v. Bean*, 49 S.W.2d 427, 428 (1932)).

Appellants respectfully submit that the same rule would apply to a guardianship proceeding, in which no guardianship had yet been created before the proposed ward died, because the trial court loses jurisdiction over the proposed ward and no guardianship estate exists. Therefore, the trial court's Order approving approving the parties' October 29, 2014 settlement agreement on May 12, 2015 was void because Mrs. Peterson died on January 11, 2015, and the settlement agreement was moot.

In particular, page 2 ¶10 of the mediated settlement agreement, which the trial court approved in error, provided for payment of attorney's fees from the proposed (then deceased) ward's estate. Appellants respectfully submit that such agreement was not enforceable under the circumstances of this case. In the case under review, the trial court did not create a guardianship or a management trust, and there was no ward's estate from which the trial court could have ordered

payment of fees. *In re Guardianship of Whitt*, 407 S.W.3d 495, 500 (Tex.App.-Houston [14 Dist.] 2013). Mrs. Peterson was not a " ward" and her property was not an " estate". *Id*.

Therefore, Appellants respectfully submit that the trial court erred in approving the mediated settlement agreement pursuant to the Final Judgment.

ISSUE NO. 3: Whether the trial court's Orders granting the Defendants, attorney ad litem, and guardian ad litem's motions for sanctions were signed in error on November 10, 2014 because the Orders were vague, overbroad, unsubstantiated and/or unlawful.

A    Order on Motion for Sanctions filed by W. Russ Jones, attorney ad litem, and Jill Young, guardian ad litem, signed November 10, 2014

The Texas Civil Practice and Remedies Code, Chapter 10 provides that the signing of a pleading or motion constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry: (1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation; (2) the claims, defenses, or other legal contentions in the pleading or motion is warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of

new law; (3) the allegations or other factual contentions in the pleading or motion have evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery…Id. (emphasis added). Tex. Civ. Prac. & Rem. Code Ann. § 10.001

Chapter 10 Sanctions require "proof that (1) the pleading or motion was brought for an improper purpose, (2) there were no grounds for the legal arguments advanced, or (3) the factual allegations or denials lacked evidentiary support; See Tex. Civ. Prac. & Rem. Code Ann. § 10.001 (Vernon 2002); *Armstrong v. Collin County Bail Bond Bd*., 233 S.W.3d 57, 62 (Tex. App.— Dallas 2007, no pet). *Save Our Springs Alliance, Inc. Lazy Nine Mun. Util. Dist. ex rel. Bd. of Directors,* 198 S.W.3d 300, 321 (Tex. App.— Texarkana 2006, pet. denied) ("non-frivolous" requirement is same as "good faith" requirement. Courts must presume parties and their counsel file all papers in good faith, and the party seeking sanctions must overcome that presumption.) *GTE Commc'ns Sys. Corp. v. Tanner,* 856 S.W.2d 725, 731 (Tex. 1993).

A pleading is groundless, when it has no basis in fact or law. *Id*. Bad faith means the "conscious doing of a wrong for dishonest, discriminatory, or malicious purposes." *Mattly v. Spiegel, Inc*.; 19 S.W.3d 890, 896 (Tex. App.—

Houston, 14ᵗʰ Dist] 2000, no pet). The trial court must measure a litigant's conduct at the time the relevant pleading was filed. *Texas-Ohio Gas,Inc.v. Mecom*, 28 S.W.3d 129, 139 (Tex. App—Texarkana 2000, no pet). Improper purpose is the equivalent of bad faith. *Parker v. Walton*, 233 S.W.3d 535, 539 (Tex. App.—Houston [14th Dist.] 2007, no pet.), *Alejandro v. Bell,* 84 S.W.3d 383, 393 (Tex. App.— Corpus Christi 2002). An improper purpose such as bad faith does not exist when a party exercises bad judgment or negligence. Instead, bad faith means the "conscious doing of a wrong for dishonest, discriminatory, or malicious purposes." *Mattly v. Spiegel, Inc*.; 19 S.W.3d 890, 896 (Tex. App.—Houston [14th Dist] 2000, no pet).

In deciding whether a pleading was filed in bad faith or for purposes of harassment, the trial court must measure a litigant's conduct at the time the relevant pleading was filed. *Texas-Ohio Gas,Inc. v. Mecom*, 28 S.W.3d 129, 139 (Tex. App—Texarkana 2000, no pet). Texas law requires the Court examine not just objectively, but examine subjectively the motives and credibility of the attorney who signed the petition. Chapter 10 sanctions are generally only justified in the following scenarios: attorneys not reading the pleading, not conducting adequate investigation into the facts, groundless and brought in bad faith, groundless and brought to needlessly increase the cost of litigation; or

statements known to be false. Tex. Civ. Prac. Rem. Code 10.001.

No evidence was introduced at the hearing on October 9, 2014 overcome presumption that the pleadings were filed in good faith. (RR Vol. 10, pages 19-33). Schwager demonstrated during the hearing December 9, 2014 that she did not file any pleadings in bad faith, for improper purpose, or with any belief that claims lacked evidentiary or legal support. (RR Vol. 12, p. 4, 23). Likewise, the trial court's orders for sanctions contained no explanation of the basis for the sanction and no nexus between any alleged violation and the sanctions amount. Chapter 10 states that "[t]he sanctions order "shall describe . . . the conduct the court has determined violated Section 10.001 and explain the basis for the sanction imposed." Tex. Civ. Rem Code. 10.001.

Appellants submit that the trial court abused its discretion ordering sanctions under Chapter 10 against Candice Schwager because the claims for sanctions lacked evidentiary or legal support.

B      Order on David Peterson and Carol Anne Manley's Motion for Sanctions, signed November 10, 2014

Appellants respectfully submit that the trial court abused its discretion in awarding $10,000 in sanctions for Candice Schwager's alleged violation of Rule 3.07 of the Texas Disciplinary Rules of Professional Conduct. First, there was no

evidence presented to prove a violation of Rule 3.07.  Second, there was no nexus between the sanction and the alleged offensive conduct.  Third, there was no consideration of lesser sanctions or alternatives.

Appellants respectfully submit that the trial judge should have disqualified himself after receiving notice from the attorney ad litem at the sanctions hearing on October 9, 2014 that the trial judge was named as a co-conspirator in alleged civil rights violations related to Ruby Peterson in a proposed amended complaint attached to a motion for leave to file a first amended original complaint in Civil Action No. H-14-2179 pending in the United States District Court for the Southern District of Texas, Houston Division. (RR Vol. 10, page 26, lines 10-25; page 27, lines 1-3).

Mr. Jones encouraged the misperception by the trial judge that the Appellants were suing him in federal court as follows:

> "The Court will recall that the last time we were down here on the hearing, and I agree with Ms. Schwager on this, that the Court was the greatest thing since sliced bread, best probate judge in Harris County, quote me on it. Now you are being sued as a co-conspirator with the City of Sugar Land and with Silverado for conspiring and engaging in overt acts to deny Ruby Peterson's civil rights, her federally protected rights.  Pardon my French, Your Honor, but that's a load of horse shit."

(RR Vol. 10, page 32, lines 13-21).

"I would encourage you to levy significant costs. I have asked for $120,000 in costs, $40,000 from each of the…Plaintiffs rather, or however they want to carve it up, because I think it's going to cost that much for myself and Ms. Young to sit through this case and adequately represent Ruby Peterson to the end. And I think you need to sanction her or she's going to keep on doing it. She has been sanctions by Judge Butts. It was a rather nominal sanction and she obviously didn't get the message. She needs to be hit a little bit bigger here. Thank you, Judge."

(RR Vol. 10, page 32, lines 22-15; page 33, lines 1-7).

Although the trial judge joked that he didn't mind the potential controversy, (RR Vol. 10, page 27, lines 14-18), it was apparent that, despite Appellants' counsel's explanation, (RR Vol. 10, page 42, lines 2-23; page 43, lines 2-16), he was highly offended by being named as a defendant in a pleading filed in federal court. (RR Vol. 10, page 43, lines 17-25; page 44, lines 1-7; page 48, lines 4-9).

The trial judge expressed his feelings as follows:

"But this is sitting up there of record in the Federal Courts. This is a recorded, filed pleading, correct?"

(RR Vol. 10, page 42, lines 24-25; page 43, line 1).

"Well, I'm not going to make this about me but this is just frustrating, you know. I don't have a dog in this fight. I don't wake up thinking

21

about, gee, what can I do to harm Ruby Peterson or do something, it's just ridiculous. I mean, ludicrous. To even have a pleading that would accuse me of that. I'm going to sort of put it aside in my consideration of all this and what's transpired, but it's just reckless and it's not right and it's not fair. It's not just. I mean, this idea that people just are out to do nefarious things and hurt somebody and make money or whatever you think or Ms. Schwager thinks it's ludicrous and it's wrong and I try not to get involved in any of it except what I'm supposed to do here today. But then I see that things bring me into it in some fashion and it just—it's just wrong.  And then of course she is not here today."

(RR Vol 10, page 43, lines 17-25; page 44, lines 1-6).

Appellants respectfully submit that the trial judge's actions on November 10, 2014 dismissing their claims and sanctioning their attorney was unduly influenced by his personal feelings about being identified as an alleged co-conspirator in a pleading filed in federal court.  The trial judge referenced his objection to allegations of some kind of conspiracy again at the hearing on December 9, 2014, stating as follows:

"I mean, I think we got to the point.  I think the settlement was exactly what should have happened probably but it should have happened outside the courtroom, really, and so all this bomb throwing and so and so is this or that, or there is some kind of conspiracy going on, it's just so counterproductive I can't tell you."

(RR Vol 12, page 9, lines 15-20).
…

22

"I've been here almost four years. I'm sort of the new guy on the block and I can tell you, and I really feel this way about all judges, most, you know, again, there are exceptions, but my integrity can't be questioned."

(RR Vol 12, page 10, lines 18-21).

Appellants submit that the trial judge had a duty to disqualify himself under Texas Judicial Canon 3B(1), which provides: (1) A judge shall hear and decide matters assigned to the judge except those in which disqualification is required or recusal is appropriate. The moment that the trial judge was told that he was being sued as a co-conspirator, although this statement by the attorney ad litem was false, he could reasonably be perceived to have a conflict of interest in the outcome of the guardianship proceeding and related claims, which would preclude him from continuing to preside over this matter.

Appellants submit that the Texas Constitution, Article 5, Section 11 provides:

Sec. 11. DISQUALIFICATION OF JUDGES; EXCHANGE OF DISTRICTS; HOLDING COURT FOR OTHER JUDGES. No judge shall sit in any case wherein the judge may be interested, or where either of the parties may be connected with the judge, either by affinity or consanguinity, within such a degree as may be prescribed by law, or when the judge shall have been counsel in the case. ...

23

(Amended Aug. 11, 1891, and Nov. 6, 2001.)

Appellants submit that the failure or refusal of the trial judge to voluntarily disqualify or recuse himself sua sponte, when he determined that he may have a personal interest in the outcome of the guardianship proceeding, based on information, although false, that he was being sued in federal court on claims related to the proceed, raised a question as to the judge's impartiality and the validity of the trial court's orders beginning on October 9, 2014.

There is no waiver for Constitutional disqualification and a party may assert disqualification for the first time on appeal. *Buckholts Indep. Sch. Dist. V. Glaser*, 632 S.W.2d 146, 148 (Tex. 1982); *Monroe v. Blackmon*, 946 S.W.2d 533, 542 (Tex. App. -- Corpus Christi 1997, orig. proceeding); *Fry v. Tucker*, 202 S.W.2d 218, 221-22 (1947). The disqualification rules in Article V, section 11 are expressed in unconditional language, and are regarded as mandatory and to be "rigidly enforced." See *Fry v. Tucker*, 202 S.W.2d 218, 221 (1947). Disqualification affects a judge's jurisdiction and power to act. See *Postal Mut. Indemnity Co. V. Ellis*, S.W.2d 482, 484 (1943). Therefore, disqualifications, like other jurisdictional barriers, cannot be waived. See *In re Union Pacific Resources Co.*, 969 S.W.2d 427, 428 (Tex. 1998); *Buckholts Indep. Sch. Dist. v. Glaser,* 632

24

S.W.2d 146, 148 (Tex. 1982); The standard of review is de novo. *Palais Royal, Inc. v. Partida*, 916 S.W.2d 650 (Tex. App.--Corpus Christi 1996, [leave denied]).

Appellants also submit that the trial court misconstrued Rule 3.07, which was cited as to sole basis for sanctions. Rule 3.07 provides:

RULE 3.07 TRIAL PUBLICITY

(a) In the course of representing a client, a lawyer shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicatory proceeding. A lawyer shall not counsel or assist another person to make such a statement.

(b) A lawyer ordinarily will violate paragraph (a), and the likelihood of a violation increases if the adjudication is ongoing or imminent, by making an extrajudicial statement of the type referred to in that paragraph when the statement refers to:

(1) the character, credibility, reputation or criminal record of a party, suspect in a criminal investigation or witness; or the expected testimony of a party or witness;

(2) in a criminal case or proceeding that could result in incarceration, the possibility of a plea of guilty to the offense; the existence or contents of any confession, admission, or statement given by a defendant or suspect; or that person's refusal or failure to make a statement;

(3) the performance, refusal to perform, or results of any examination or test; the refusal or failure of a person to allow or submit to an examination or test; or the identity or nature of physical evidence expected to be presented;

(4) any opinion as to the guilt or innocence of a defendant or suspect

in a criminal case or proceeding that could result in incarceration; or

(5) information the lawyer knows or reasonably should know is likely to be inadmissible as evidence in a trial and would if disclosed create a substantial risk of prejudicing an impartial trial.

(c) A lawyer ordinarily will not violate paragraph (a) by making an extrajudicial statement of the type referred to in that paragraph when the lawyer merely states:

(1) the general nature of the claim or defense;

(2) the information contained in a public record;

(3) that an investigation of the matter is in progress, including the general scope of the investigation, the offense, claim or defense involved;

(4) except when prohibited by law, the identity of the persons involved in the matter;

(5) the scheduling or result of any step in litigation;

(6) a request for assistance in obtaining evidence, and information necessary thereto;

(7) a warning of danger concerning the behavior of a person involved, when there is a reason to believe that there exists the likelihood of substantial harm to an individual or to the public interest; and

(8) if a criminal case:

(i) the identity, residence, occupation and family status of the accused;

(ii) if the accused has not been apprehended, information necessary to aid in apprehension of that person;

(iii) the fact, time and place of arrest; and

(iv) the identity of investigating and arresting officers or agencies and the length of the investigation.

Appellants submit that there is no evidence or insufficient evidence to show that Appellants' counsel violated Rule 3.07. Tex. Disc. R. Prof. Cond. 3.07.

Defendants presented no evidence that Schwager made extrajudicial statements that had a substantial likelihood of prejudicing an adjudicatory proceeding, nor any evidence that any act or omission on her part interfered with the administration of justice. Tex. Disc. R. Prof. Cond. 3.07. (RR Vol. 10, page 66, lines 14-25; pages 67-85; page 86, lines 1-4).

Appellants submit that it is virtually impossible to make a finding that their counsel made extrajudicial statements which substantially prejudiced the administration of justice, because the only evidence presented to the trial court was unauthenticated hearsay, not within an exception to Rule 803 or 804. T.R.E. 802, 803, 804, 901. Hearsay is inadmissible, subject to certain limited exceptions not applicable in this matter. T.R.E. 802.

None of Defendants' exhibits met any of these exceptions to the hearsay rule. Furthermore, Appellants' counsel was neither a party to this case, nor was she speaking on behalf of a party. Appellants submit that their counsel's extrajudicial statements were made on her own behalf—as an advocate for the disabled. None of the Defendants' exhibits were authenticated, as required by Texas Rule of Civil Procedure 901. Appellants submit that the introduction of authenticated hearsay evidence into the record was an abuse of discretion. Tex. R. Evid. 802, 803, 804, 901.

There was likewise no evidence that Appellants' counsel violated Rule 3.07, and the trial court abused its discretion in entering the Order for $10,000 sanctions against Ms. Schwager pursuant to Rule 3.07.  Tex. Disc. R. Prof. Cond. 3.07. Appellants submit that the trial court also abused its discretion by exceeding the limits of its inherent power and failing to exercise restraint. *McWhorter v. Sheller*, 993 S.W.2d 781, 788-789 (Tex. App.—Houston -14th Dist 1999, pet denied). The inherent power to sanction should only be used for serious instances of bad faith conduct during litigation.  *Kutch vs. Del Mar College*, 831 S.W.2d 506, 510 (Tex. App.—Corpus Christi, 1992, no pet).  In order for the inherent power to sanction, a court must find some evidence and factual findings that the conduct complained of significantly interfered with the court's legitimate exercise of its powers. *Id*. The inherent power requires courts to consider less stringent sanctions than what was ordered in this matter. *Transamerican National Gas v. Powell*, 811 S.W.2d 913 (Tex. 1991).

Appellants also submit that their counsel's extrajudicial statements were protected speech.  The United States Supreme Court has said that "it is unquestionable that in the courtroom itself, during a judicial proceeding, whatever right to 'free speech' an attorney has is extremely circumscribed . . .but not one statement complained of was alleged to have occurred in the

courtroom. Lawyers are restricted to ethical restraints that do not apply to laypersons, but that does not mean a judge can sanction truthful speech or censor all talk of evidence entered in a case from public scrutiny. *In re Sawyer*, 360 U.S. 622 (1959); *Gentile v. State Bar of Nev*., 501 U.S. 1030, 1071 (1991).

Significantly, the Texas Constitution provides greater protection to speech than the First Amendment, such that the foregoing cases are not determinative. The power to regulate the practice of law resides in the Supreme Court of Texas, and derives from both a statutory grant of power, see Tex. Govt. Code Ann. § 81.01 l(c) (Vernon 1988), and the Supreme Court of Texas' inherent judicial power. See generally *Eichelberger v. Eichelberger*, 582 S.W.2d 395, 397-98 & n. 1. (Tex.1979).

Appellants submit that the trial court did not consider any evidence that established a violation of any disciplinary rule. Appellants do not dispute that the State Bar has the right to promulgate rules restricting the speech of attorneys. However, the power to restrict an attorney's speech is not unrestricted. The Court in *Polk vs. State Bar of Texas* said, "an Attorney's speech could not be reprimanded by the Texas State Bar because of objection to content." *Polk v. State Bar of Texas,* 374 F. Supp. 784 (N.D. Tex. 1974); TEXAS CONST. ART. 8, 13.

In fact, the Court stated "It cannot be seriously asserted that a private citizen surrenders his right to freedom of expression when he becomes a licensed attorney in this state." *Polk v. State Bar of Texas*, 374 F. Supp. 784 (N.D. Tex. 1974). TEXAS CONST. ART. 8, 13. In *Polk v. State Bar of Texas*, Polk successfully enjoined the Texas State Bar from chilling his speech, even though he was critical of a District Attorney and Judge—suggesting corruption. 374 F. Supp. 784 (N.D. Tex. 1974). The United States Constitution has been read to limit and restrain the state's power to prescribe standards of conduct for attorneys. *NAACP v. Button*, 371 U.S. 415, (1963).

The Constitutions of Texas and United States protect not only the ability of the speaker to speak but of the public to receive information. TEX. CONST. ART. I SEC 8, 13, U.S. CONST. AMEND I. The constitutional protections of free speech and press were fashioned to assure the unfettered interchange of ideas for bringing about political and social changes desired by the people. *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). There is universal agreement that a major purpose of the first amendment is to protect the free discussion of governmental affairs. *Mills v. Alabama,* 384 U.S. 214, 218 (1966). The Appellants submit that the motion for sanctions was intended to punish core political speech on matters of public concern protected by the Constitution.

TEXAS CONST. ART. I, SEC 8, 13. U.S. CONST. AMEND I.

The Court abused its discretion by issuing sanctions withou consideration of the required nexus under *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). Appellants also submit that there is no evidence that any of the alleged statements by their counsel substantially prejudiced the administration of justice, which is a key component of Rule 3.07. Tex. Disc. R. Prof. Cond. 3.07. There was no evidence presented to justify $10,000 in sanctions even if Rule 3.07 had been legitimately violated, which it was not.

In *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991), the Supreme Court held that due process of law requires that such a discovery sanction be "just." The Court expressed the "justness" requirement in several ways, including the requirement that there must be a direct relationship between the offensive conduct and the sanction imposed. *Id*. This is sometimes called the "nexus" requirement. The TransAmerican requirement of "justness" provides that the punishment imposed must not be excessive, and that the punishment must fit the crime. *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). The court must consider less stringent sanctions before imposing death penalty sanctions. The trial court abuses its discretion if "the

sanction it imposes exceeds the purposes that discovery sanctions are intended to further." *TransAmerican*, 811 S.W.2d at 918.

At the hearing on July 28, 2014, during argument regarding the potential limits on pretrial publicity, the trial judge made the following statement:

> "I haven't eve thought about or looked at my authority in terms of, you know, it's usually a criminal trial sometimes or high profile, which this may be a high profile civil case where you do have to think through the necessity of restricting someone to do certain things to protect the objectivity of the jury pool."

(CR Vol. 4, page 21, lines 15-21).

Appellants submit that the foregoing statement implicates limits on the application of Rule 3.07. Nevertheless, the trial court ordered sanctions against Appellants' counsel without substantial evidence of a violation of Rule 3.07, without considering alternatives, and without stating a nexus between the alleged sanctionable conduct and the sanction imposed. Therefore, Appellants submit that the sanctions Order was an abuse of discretion, which should be reversed.

## CONCLUSION AND PRAYER

WHEREFORE, Appellants request the Court to reverse the trial court's Final Judgment and Orders and render Judgment dismissing the guardianship

proceeding. Alternatively, Appellants request the Court to reverse the trial court's Final Judgment and Orders and remand the proceeding to the trial court for dismissal. Appellants also request the Court to reverse the Orders imposing sanctions. Appellants request the Court to grant them all additional relief to which they may be justly entitled.

Respectfully submitted,

/s/ Philip M. Ross
Philip M. Ross
State Bar No. 17304200
1006 Holbrook Road
San Antonio, Texas 78218
Phone: 210/326-2100
Email: ross_law@hotmail.com

Candice Schwager
State Bar No.
1417 Ramada Drive
Houston, TX 77062
Phone: 832-315-8489
FAX: 713-583-0355

Attorneys for MACKEY GLEN
PETERSON, TONYA PETERSON,
DON LESLIE PETERSON, and LONNY
PETERSON

## CERTIFICATION

I hereby certify that every factual statement in the petition is supported by competent evidence included in the appendix or record.

/s/ Philip M. Ross
Philip M. Ross

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief is in compliance with Texas Rule of Appellate Procedure Rule 9. It contains 7,495 words, 33 pages, 14 point typeface.

/s/ Philip M. Ross
Philip M. Ross

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above document was e-filed and sent by email or electronic delivery by agreement to:

Sarah Pacheco
Kathleen Beduze
Crain, Caton & James, PC
1401 McKinney St., Suite 1700
Houston, TX 77010

Russ Jones
Underwood, Jones, Scherrer &
Malouf, PLLC
5177 Richmond Ave., Suite 505
Houston, TX 77056

Jill Young
MacIntyre, McCulloch, Stanfield, Young, LLP
2900 Weslayan, Suite 150
Houston, TX 77027

Josh Davis
Lewis Brisbois Bisgaard & Smith, LLP
Weslayan Tower, Suite 1400
24 Greenway Plaza
Houston, TX 77046

on November 16, 2015.

/s/ Philip M. Ross
Philip M. Ross